**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| Stanley P. Baudin )<br>  )<br>  Plaintiff, )<br>  )<br> v. )<br>  )<br> AstraZeneca Pharmaceuticals LP; )<br> AstraZeneca LP; and Merck Sharp & )<br> Dohme Corporation )<br>  )<br>  Defendants. ) | Case No. 18-1063<br><br>JUDGE SHELLY DICK<br><br>MAGISTRATE JUDGE<br>ERIN WILDER-DOOMES |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

**MAY IT PLEASE THE COURT:**

Defendants, AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and Merck Sharp & Dohme Corporation (collectively "Defendants"), move to dismiss the Petition for Damages filed by Plaintiff, Stanley P. Baudin ("Plaintiff"), under Rules 12(b)(6), 9(b), and 8(a)(2) of the Federal Rules of Civil Procedure.

### I.   SUMMARY OF THE ARGUMENT

Plaintiff alleges that he was diagnosed with gastric cancer as a result of ingesting Nexium®. (*See* Rec. Doc. 1-1 ¶¶ 2, 31.) The Petition fails to state a claim upon which relief can be granted for the following reasons:

> First, Plaintiff's claims should be dismissed with prejudice in their entirety because: (i) the Louisiana Products Liability Act ("LPLA") provides the exclusive remedy for Plaintiff's recovery, precluding any claims for fraud, negligent misrepresentation, and redhibition based on non-economic losses; and (ii) Plaintiff fails to plead any remaining viable LPLA claim based on damage to a product or economic loss with sufficient specificity to state a claim for relief as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

- Second, all of Plaintiff's claims should be dismissed with prejudice in their entirety for the independent reason that they do not satisfy Rule 8 of the Federal Rules of Civil Procedure, nor do they state a claim upon which relief can be granted

- Third, even if all of Plaintiff's claims are not dismissed under the well-established principles of law, Plaintiff's fraud claims do not satisfy Rule 9 of the Federal Rules of Civil Procedure because the Petition fails to plead any alleged fraud allegations with particularity and the fraud claims should be dismissed with prejudice.

## II.     ARGUMENT

### A.     LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a claim when the plaintiff "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). Motions to dismiss test the legal sufficiency of a complaint. *Jason v. Amer. Arbitration Ass'n, Inc.*, 2002 WL 1059005, at *1 (E.D. La. May 23, 2002). Dismissal under Rule 12(b)(6) "is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level." *Bass v. Stryker*, 669 F.3d 501, 506 (5th Cir. 2012). Rule 8(a) requires that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" or be subject to dismissal. Fed. R. Civ. P. 8(a)(2). Accordingly, to comply with Rule 8, the complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Moreover, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* This is because, as the Supreme Court has explained, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly,* 550 U.S. at 555, n.3. Accordingly, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" and pleadings that lack a "statement of circumstances, occurrences, and events in

2

support of the claim presented" should be dismissed. *Id*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) (applying *Twombly* and noting that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) ("When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." (citing *Twombly*, 550 U.S. at 558) (internal quotation marks omitted)).

As set forth more fully herein, Plaintiff has offered nothing more than legal conclusions masquerading as factual allegations and as such Defendants' motion to dismiss should be granted, and Plaintiff's claims should be dismissed.

    **B.    ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE PREEMPTED BY THE LPLA AND PLAINTIFFS FAILS TO ADEQUATELY PLEAD THE LPLA AND ANY REDHIBITION CLAIMS.**

        **1.  The Louisiana Products Liability Act provides the exclusive remedy for plaintiff's recovery.**

Plaintiff's Petition contains allegations of fraud and negligent misrepresentation. (*See* Rec. Doc. 1-1 ¶¶ 4, 5, 6, 133, 154, and 188). To the extent such claims are asserted, they are precluded by the LPLA. Likewise, any claim for redhibition based on non-economic loss is precluded by the LPLA. It is axiomatic that the LPLA is the "exclusive remedy for products liability actions against manufacturers under Louisiana law." *Stahl v. Novartis Pharm.*, 283 F.3d 254, 260 (5th Cir. 2002). The LPLA expressly states that a "claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." La. Rev. Stat. § 9:2800.52. Louisiana courts have made clear that the LPLA preempts alternate causes of action:

> [A] court applying Louisiana law may dismiss claims against manufacturers that are inconsistent with these exclusive theories of liability set forth in the LPLA. Furthermore, courts applying Louisiana law have frequently dismissed cases that assert theories of fraud, negligence, and misrepresentation because such claims are outside the scope of the LPLA.

*Ervin v. Guidant Corp*., 2010 WL 3081306, at *2 (E.D. La. Aug. 5, 2010). Indeed, Judge Fallon of the United States District Court for the Eastern District of Louisiana explicitly recognized this principle as follows: "The fact that the Plaintiff in this case has not specifically asserted a claim under the LPLA does not allow them to circumvent the LPLA's exclusivity provision." Other courts have reached similar results. *See Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1248 (5th Cir. 1997) (holding that Louisiana law *only* recognizes the four theories of recovery for product liability actions which are set forth by the LPLA); *Scianneaux v. St. Jude Med. S.C., Inc.,* 961 F. Supp. 2d 808, 809 (E.D. La. Aug. 9, 2013) (finding that plaintiff could not assert claims outside the scope of the LPLA); *Cooper v. Wyeth, Inc*., 2010 WL 2653321 (M.D. La. June 25, 2010) (dismissing fraud, negligence, negligent misrepresentation, breach of implied warranty, and punitive damages claims under the LPLA); *Hilton v. Atlas Roofing Corp. of Miss.,* 2006 WL 1581239, at *3 (E.D. La. May 18, 2006) (dismissing plaintiff's claims for breach of express and implied warranties, negligence, fraud, and unjust enrichment under the LPLA). Furthermore, Louisiana courts have held that "[f]raud claims cannot be used to circumvent the LPLA." *See Scott v. Am. Tobacco Co.*, 2004-2095 (La. App. 4 Cir. 2/7/07), 949 So. 2d 1266, 1274.

Additionally, redhibition claims seeking recovery beyond damage to the product itself or economic loss are barred by the LPLA's exclusivity provision. *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-0750, 2010 WL 2195685, at *4 (W.D. La. May 28, 2010) (citing La. Rev. Stat. art. 9:2800.53(5); *Aucoin v. Southern Quality Homes, LLC,* 2007–

4

1014, p. 7, n. 8 (La.2/26/08), 984 So. 2d 685, 691). Here, Plaintiff seeks redhibition damages based on non-pecuniary damages (Rec. Doc. ¶ 212), which are barred by the LPLA.

Thus, because the LPLA is the exclusive remedy for products liability actions against manufacturers under Louisiana law, any claims for fraud, negligent representation, and redhibition based on non-economic losses are barred and should be dismissed accordingly.

### 2. Plaintiff fails to plead his LPLA claims with sufficient specificity under *Twombly/Iqbal*.

Under the LPLA, the plaintiff bears the burden of proof. To establish liability under the LPLA, a plaintiff must show that (1) the defendant is a manufacturer of the product, (2) the plaintiff's damage was proximately caused by a characteristic of the product, (3) that this characteristic made the product "unreasonably dangerous," and (4) that plaintiff's damage arose from a reasonably anticipated use of the product. *See* La. Rev. Stat. § 9:2800.54; *Stahl*, 283 F. 3d. at 261. To establish that a product is unreasonably dangerous, the plaintiff must show that the defect relates to: (i) construction or composition of the product, (ii) design, (iii) the adequacy of warning, (iv) or the manufacturer's failure to conform to an express warranty. La. Rev. Stat. § 9:2800.54(B). Lastly, the plaintiff must show that the "unreasonably dangerous" characteristic existed at the time the product left the manufacturer's control, or resulted from a reasonably anticipated alteration to the product. *Id*. at § 2800.54(C). As discussed more fully herein, Plaintiff's claims fail to satisfy the LPLA requirements and *Twombly/Iqbal* such that the claims should be dismissed accordingly.

### i. Design Defect

Under the LPLA, a product is considered "unreasonably dangerous in design" if at the time it left the manufacturer's control, (1) there existed an alternative design that was capable of preventing claimant's damage, and (2) the likelihood that the product's design would cause the

harm complained of, and the gravity of that harm, together outweighed the burden of adopting the alternative design. La. Rev. Stat. § 9:2800.56; *Broussard v. Procter & Gamble Co.*, 463 F. Supp. 2d 596, 610 (W.D. La. 2006), *aff'd*, 517 F.3d 767 (5th Cir. 2008). While a plaintiff need not plead each of these elements with specificity, a "formulaic recitation of the statutory provisions" and "conclusory allegations" are not sufficient. *See Purvis v. Teva Pharms., USA*, 901 F. Supp. 2d 716, 721 (M.D. La. 2012).

Here, Plaintiff fails to plead the necessary facts to establish a design defect under the LPLA. In his Petition, Plaintiff relies on nothing more than statutory buzz words, alleging that "Nexium was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff" and that "Nexium was in a defective condition and unsafe." (*See* Rec. Doc. 1-1 ¶¶ 165-169, 173-176). These are clearly legal conclusions, and as such are the sole province of the trier of fact. These allegations fail to explain how any particular Defendant's specific product was allegedly defective or what attributes of each Defendant's product made it unreasonably dangerous. Stated simply, the Petition is devoid of anything on the order of "factual" detail as to how prescription Nexium® is allegedly defective in design. It is well-settled that a mere "formulaic recitation of the statutory provisions" and "conclusory allegations" are not sufficient to satisfy a design defect claim. *See Kennedy v. Pfizer,* 2014 WL 4093065, at *4 (W.D. La. Aug. 15, 2014) (holding that mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are not sufficient to support a design defect claim); *see also Purvis*, 901 F. Supp. 2d at 721 ("[Plaintiff] has not alleged that there existed an alternative design for the drug which is an essential element of a LPLA design defect claim."). Notably, in *House v. Bristol-Myers Squibb Co.*, 2017 WL 55876, at *2-3 (W.D. Ky. Jan. 4, 2017), the court rejected similar allegations as insufficient to state a design defect claim.

Like here, "the only assertion . . . as to how the product design was defective is a description of how the class of products works." *Id.* at *4. The *House* court concluded that it "cannot reasonably infer from the generic description of SGLT2 inhibitors' mechanism of action that Farxiga was defective or unreasonably dangerous." *Id.* (quotations and alterations omitted). Similarly, here, the Court cannot conclude from the generic description of PPIs that Nexium® was defective or unreasonably dangerous.

Plaintiff also fails to adequately plead the existence of an alternative design. Although the Petition attempts to identify alternative methods of treatment for GERD through H2 receptor antagonists (*see* Rec. Doc. 1-1 ¶ 177), it fails to identify the design of these products or any actual alternative design for prescription Nexium®. This is because Plaintiff cannot even specify what makes prescription Nexium® defective. Indeed, courts have found merely referencing other products is not sufficient to establish an alternative design. *See Robertson v. AstraZeneca Pharms., LP*, 2015 U.S. Dist. LEXIS 136308, *11 (E.D. La. Oct. 6, 2015) ("Both allegations are insufficient because the existence of alternate products does not demonstrate the existence of a specific alternate design."). In sum, Plaintiff's conclusory allegations are void of sufficient factual content. But it is well-settled that a mere "formulaic recitation of the statutory provisions" and "conclusory allegations" are not sufficient to satisfy a design defect claim. *See Kennedy*, 2014 WL 4093065, at *4; *see also Purvis*, 901 F. Supp. 2d at 721 ("[Plaintiff] has not alleged that there existed an alternative design for the drug which is an essential element of a LPLA design defect claim.").

Further, Plaintiff fails to assert factual support showing the likelihood that the design of prescription Nexium® would cause the harm complained of or that the gravity of that harm outweighed the burden of adopting the alternative design. *See Purvis*, 901 F. Supp. 2d at 721.

7

Instead, Plaintiff makes conclusory allegations that an alternative design "would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Nexium." (*See* Rec. Doc. 1-1 ¶ 177). Absent factual support that the gravity of the harm outweighed the burden of adopting the alternative design, Plaintiff's design defect claim is inadequately pled and should be dismissed.

In short, Plaintiff's conclusory allegations are insufficient to state a claim for relief, and the design defect claim should be dismissed accordingly pursuant to Rule 12(b)(6).

### ii. Failure to Warn

To successfully maintain a failure to warn claim under the LPLA, the plaintiff must prove that the product has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about the characteristic. La. Rev. Stat. § 9:2800.57(A); *Stahl*, 283 F.3d at 264. For product liability claims involving prescription drugs, Louisiana applies the "learned intermediary doctrine." Under this doctrine, "a drug manufacturer discharges its duty to consumers by reasonably informing prescribing physicians of the dangers of harm from a drug." *Stahl*, 283 F.3d 254 at 265. Accordingly, to prevail on a failure to warn case under the LPLA, a plaintiff must prove (1) that the manufacturer failed to warn the *treating physician* of the dangers associated with the drug *and* (2) that this failure was both a cause in fact and proximate cause of plaintiffs' injury. *Willett v. Baxter*, 929 F.2d 1094, 1098-99 (5th Cir. 1991); *Hargrove v. Bos. Sci. Corp.*, 2014 WL 4794763, at *11 (E.D. La. Sept. 24, 2014) (holding that under the learned intermediary doctrine "the manufacturer has no duty to warn the patient, but need only warn the patient's physician").

Plaintiff's Petition fails to satisfy either prong required for a failure to warn claim. Again, Plaintiff only recites conclusory statements regarding the alleged inadequate warning without

8

any factual support. Plaintiff fails to allege any details as to the warning provided by any Defendant to the prescribing physician, even failing to identify who that physician is. *See Willett*, 929 F.2d at 1098-99 ("the plaintiff must show that a proper warning would have changed the decision of the *treating physician*…) (emphasis added). On this basis alone, the failure to warn claim must be dismissed.

In addition, Plaintiff's warning claim fails because he has failed to sufficiently plead causation. To establish the element of causation, "the plaintiff *must* show that a proper warning would have changed the decision of the *treating physician*, i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Jenkins v. Bristol-Myers Squibb,* 2015 WL 5012130, at *4 (E.D. La. Aug. 21, 2015) (emphasis added); *Willett*, 929 F.2d at 1098-99 ("the plaintiff must show that a proper warning would have changed the decision of the *treating physician*…) (emphasis added). Here, Plaintiff has provided only conclusory allegations in his Petition—without any factual support—that "[u]pon information and belief . . . Plaintiff's physicians would have discussed the risks of developing gastric cancer with Plaintiff and/or would not have prescribed it." (*See* Rec. Doc. 1-1 ¶ 192.) Plaintiff's conclusory allegations are contradictory, first suggesting that Plaintiff's physicians still would have prescribed Nexium® and second suggesting second that his physicians would not prescribe it. It is clear that Plaintiff has no idea how his treating physicians would have acted or what they would have done. Additionally, Plaintiff fails to identify what alleged physicians were not warned by Defendants, which particular Defendants did not warn Plaintiff's physicians, what statements were purportedly made to these physicians, how these statements were made to physicians, and what alleged physicians would not have actually prescribed Nexium®. In the absence of such factual content, Plaintiff's failure to warn claim should be dismissed.

9

### iii.    Breach of Express Warranty

Plaintiff's claim for breach of express warranty under the LPLA also is not adequately pled. To support an LPLA claim for failure to conform to an express warranty, an express warranty must have existed to which the product did not conform. La. Rev. Stat. § 9:2800.58. To state a claim for breach of express warranty under the LPLA, the plaintiff must "(1) allege the content of the warranty and (2) explain how the warranty was untrue." *Robertson v. AstraZeneca Pharms.*, 2015 WL 5823326, at *5 (E.D. La. Oct. 6, 2015). In addition, the plaintiff must prove that he was induced to use the product by the representations made on the warranty and prove that he sustained damages proximately caused as result of the warranty being untrue. La. Rev. Stat. § 9:2800.58. Plaintiff fails to satisfy this standard for a number of reasons.

First, Plaintiff does not identify the specific AstraZeneca warranty allegedly breached or the contents thereof. (*See* Rec. Doc. 1-1 ¶¶ 195-204.) Although "[t]he complaint need not 'identify specific language offered by a manufacturer,'" it must nevertheless "'specify the warranty in question'[.]" *Robertson*, 2015 WL 5823326, at *5; *see also Corley v. Stryker Corp.*, No. 6:13-CV-02571, 2014 U.S. Dist. LEXIS 92002, at *16 (W.D. La. May 27, 2014) ("The alleged representations that the product is 'safe' or 'effective' fail to rise to the level of an express warranty.").

Plaintiff's only statements regarding the warranty are boilerplate assertions that Defendants expressly warranted that "Nexium was safe and well accepted by users." (*See* Rec. Doc. 1-1 ¶ 196.) But Plaintiff does not specify the alleged warranty as to prescription Nexium® or the contents of any alleged warranty as required by the statute. As such, it is impossible to assess whether any alleged warranty as to prescription Nexium® is even applicable or whether it was in fact breached.

Second, Plaintiff fails to identify the specific materials where the warranties appear. (*See* Rec. Doc. 1-1 ¶¶ 195-204.) Again, such general allegations do not withstand a 12(b)(6) motion. *See Robertson*, 2015 WL 5823326, at *5 (finding that plaintiff's allegations as to warranties in materials was only a "general reference" and therefore "not specific enough to survive a Rule 12(b)(6) motion"); *see also Corley*, No. 6:13-CV-02571, 2014 U.S. Dist. LEXIS 92002, at *16 (ruling that breach of express warranty claim failed because plaintiff "vaguely pointed to an alleged variety of statements, press releases, verbal assurances, and written information but did not identify, quote, or disclose the content of any of them"). Again, absent any indication as to warranties, the content thereof, or the placement of the warranties, Plaintiff has failed to state a claim for which relief can be granted.

Although Plaintiff claims that Defendants expressly warranted that Nexium was safe to Plaintiff's physicians, Plaintiff fails to allege that any specific warranty prompted any particular physician to prescribe Nexium® to Plaintiff. *See* La. Rev. Stat. § 9:2800.58. Accordingly, Plaintiff's general allegations that Nexium was represented as safe are insufficient to establish a breach of warranty claim. *See Corley*, No. 6:13-CV-02571, 2014 U.S. Dist. LEXIS 92002, at *16 ("Stating that a product is safe or effective for its intended use is nothing more than a general opinion about or praise for a product and therefore does not satisfy the statutory definition of an express warranty.").

For these reasons, Plaintiff fails to state a claim for breach of express warranty.

### 3. Plaintiff fails to plead his redhibition claim with sufficient specificity under *Twombly/Iqbal.*

"Redhibition claims for damage to a product itself or economic loss are the only exceptions to the LPLA's exclusivity provision." *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-0750, 2010 WL 2195685, at *4 (W.D. La. May 28, 2010) (citing La. Rev.

11

Stat. art. 9:2800.53(5); *Aucoin v. Southern Quality Homes, LLC,* 2007–1014, p. 7, n. 8 (La.2/26/08); 984 So. 2d 685, 691). Here, Plaintiff has failed to adequately plead any redhibition claim based on damage to a product or economic loss. Indeed, Plaintiff does not identify any damage to a product. Further, Plaintiff fails to adequately plead a claim based on economic loss. Article 2520 of the Louisiana Civil Code provides a cause of action for redhibition and states in pertinent part as follows:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price.

La. Civ. Code art. 2520. To establish a claim for redhibition under Louisiana law, the plaintiff must prove that: "(1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; (2) the thing contained a non-apparent defect at the time of sale; and (3) the seller was given an opportunity to repair the defect." *Johnson v. CHL Enterprises*, 115 F. Supp. 2d 723, 728 (W.D. La. 2000).

Here, Plaintiff has failed to adequately plead a claim for redhibition because he has failed to identify any factual allegations to support his claim. Instead, Plaintiff alleges in a conclusory fashion that "Nexium contains a vice or defect which renders it useless or its use so inconvenient that consumers would not have purchased it had they known about the vice or defect" and that "Nexium, which was sold and promoted by Defendants, possesses a redhibitory defect because it

12

is unreasonably dangerous, as described above, which renders Nexium useless or so inconvenient that it must be presumed that Plaintiff would not have ingestion (sic) Nexium had he known of the defects.") (*See* Rec. Doc. 1-1 ¶¶ 206, 207) These statements are clearly legal conclusions. As the U.S. Supreme Court has recognized, to comply with Rule 8, the complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Moreover, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*.; *Iqbal*, 129 S. Ct. at 1950 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). Stated simply, the Petition fails to provide any factual information about the seller or how, as alleged, Nexium® is useless for its intended purpose or so inconvenient as judged by the reasonable person standard. In fact, the allegations pled in the Petition suggest the contrary as Plaintiff claims to have used Nexium for 15 years, further suggesting that the product assisted Plaintiff. Likewise, the Petition fails to detail how the product is allegedly defective. It also fails to plead that the seller was given an opportunity to repair the defect. In sum, there are simply no facts supporting a redhibition claim based on damage to a product or economic loss. Thus, Plaintiff has failed to state a claim for redhibition because he has not alleged any facts to support the conclusory statements set forth in his Petition. Thus, his redhibition claim must be dismissed.

Accordingly, as set forth above, there is no basis for any of Plaintiff's claims because the (i) LPLA provides the exclusive remedy for Plaintiff's recovery, precluding any claims for fraud, negligent misrepresentation, and redhibition based on non-economic losses; and (ii) Plaintiff fails to plead any viable LPLA claim redhibition claim based on damage to a product or economic loss with sufficient specificity.

### C. PLAINTIFF'S CLAIMS DO NOT SATISFY RULE 8 NOR DO THEY STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In addition, all of Plaintiff's claims should be dismissed for the independent reason that Plaintiff fails to satisfy the requirements of Rule 8 of the Federal Rules of Procedure. Rule 8 requires that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, in addressing a motion to dismiss, courts should consider whether the complaint contains sufficient factual allegations to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 556. As the Supreme Court elaborated in *Iqbal*, facial plausibility requires plaintiff to plead ***specific*** facts implicating each named defendant:

> A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

*Iqbal*, 129 S. Ct at 1949 (emphasis added; citations omitted). Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950.

Here, Plaintiff's Petition fails to plead the most basic facts necessary to support a claim against Defendants. It does not set forth the "circumstances, occurrences and events" that *Twombly* confirms that Rule 8 mandates.

Additionally, the Petition is devoid of any indication as to: (i) how prescription Nexium® was defective or unsafe; (ii) what Defendants supposedly knew or should have known about risks associated with use of prescription Nexium®, and when they supposedly knew or should

14

have known; (iii) how prescription Nexium® could have been designed, tested or marketed differently or more safely; (iv) what warranties Defendants supposedly made, and where, when and to whom it supposedly made those warranties; (v) what statements were made by Defendants to physicians or Plaintiff, and when and how such statements were supposedly made; or any other factual allegations to justify Plaintiff's claims against Defendants. Furthermore, at no point in the Petition does Plaintiff allege any facts to support his allegations that prescription Nexium® *caused* his injuries. Quite simply, the Petition contains *no* factual allegations relating specifically to prescription Nexium® to support any claim for relief. Accordingly, Plaintiff's Petition fails to state a "plausible" claim because Plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949.

Further, Plaintiff fails to plead sufficient factual allegations to demonstrate that Nexium® actually caused his alleged injuries. Instead, Plaintiff alleges that Nexium® is a PPI and then makes a giant leap that Nexium is like all PPIs. (*See* Rec. Doc. 1-1 ¶¶ 37, 47, 61-64, 66.) In short, Plaintiff's failure to plead sufficient facts to support an allegation that Nexium® actually causes gastric cancer is fatal to his claim. The Petition does not plead *any* facts with respect to actions or inactions by Merck or the AstraZeneca defendants that could plausibly link it to Plaintiff's purported injuries. It is well-established that this type of pleading – *e.g.* asserting generic product liability claims regarding prescription pharmaceutical products is not permitted under Rule 8. *See Daughtery v. I-Flow, Inc. et al.*, 2010 WL 2034835, *3 (N.D. Tex. April 29, 2010) (granting defendants' motions to dismiss because "[plaintiff] has not set forth allegations sufficient or specific enough to plead the existence of a causal connection between his injury and the conduct of any particular defendant(s)."); *Timmons v. Linvatec Corp.*, 263 F.R.D. 582, 584-5

15

(C.D. Cal. Feb. 9, 2010) (granting with prejudice AstraZeneca's motion to dismiss because "[p]laintiffs' claims against AstraZeneca [did] not rise above the speculative level" and "the Complaint does not allege any facts that would permit a reasonable inference of liability against AstraZeneca"); *Combs v Stryker Corp.*, 2009 WL 4929110, *3 (E.D. Cal. Dec. 14, 2009) (granting AstraZeneca's motion to dismiss with prejudice because "[p]laintiffs are merely speculating that [AstraZeneca] could be liable. Thus [p]laintiffs' allegations do not plead adequate facts for even an inference of [d]efendants' liability, and their claims against [d]efendants cannot stand"); *Dittman v. DJO, LLC*, 2009 WL 3246128, *3 (D. Colo. Oct. 5, 2009) (granting with prejudice motions to dismiss of AstraZeneca, holding that the "Plaintiff has no facts, only speculation, on which to base his claim that defendants' products caused or contributed to his injury"); *Gilmore v. DJO Inc.,* 663 F. Supp. 2d 856, 862 (D. Ariz. 2009) (granting AstraZeneca's motion to dismiss because the plaintiffs had "done little more than allege that the AstraZeneca defendants caused them harm" and "that is not sufficient to withstand a motion to dismiss").

For these reasons, Plaintiff's Petition neither provides proper notice to each defendant of the claims against it nor allows the Court to draw the reasonable inference that each defendant is liable for the misconduct alleged, and thus, Plaintiff's claims against Defendants should be dismissed. *Iqbal*, 129 S. Ct., at 1954 ("Rule 8 does not empower [Plaintiffs] to plead the bare elements of [their] cause of action, affix the label 'general allegation,' and expect [their] claim to survive a motion to dismiss."); *Butler v. Louisiana State Univ. Health Scis. Ctr.*, 2012 WL 3263888, at *3 (W.D. La. Aug. 9, 2012) (dismissing plaintiff's LPLA claims because the petition was void of the required specific factual allegations as required by the Supreme Court in *Iqbal,* and *Twombly*) (internal citations omitted).

### D. PLAINTIFF HAS FAILED TO PLEAD FRAUD ALLEGATIONS WITH PARTICULARITY.

Plaintiff alludes to a claim for fraud in Paragraphs 5, 6, 133, 154, and 188 of the Petition. To the extent Plaintiff is asserting a claim for fraud, his fraud allegations are not pled with the requisite particularity and should thus be stricken. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9. Thus, allegations of fraud must meet a higher standard than the basic notice pleading required by Rule 8. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Tel–Phonic Serv., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

Plaintiff asserts that Defendants "concealed their knowledge of Nexium's defects" and that Defendants made representations "with the intent of defrauding and deceiving the Plaintiff's physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense and/or purchase Nexium." (Rec. Doc. 1-1 ¶¶ 5-6.) Plaintiff also makes other non-descriptive allegations of fraud. (Rec. Doc. 1-1 ¶¶ 133, 154, 188.) Plaintiff's allegations fail to specify the times, dates, places, and details of the alleged fraudulent activity, or the person(s) making the alleged misrepresentations. In short, Plaintiff's attempted fraud allegations fall woefully short of the heightened requirements for pleading fraud established in Rule 9(b). Because Plaintiff's fraud-based allegations fail to satisfy Rule 9(b), any fraud claims alleged should be stricken.

**E.  PLAINTIFF IS NOT ENTITLED TO CONDUCT DISCOVERY OR LEAVE TO AMEND.**

This Court should dismiss the claims against Defendants without discovery and without leave to amend. Leave to amend "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citing *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir. 1981)). Permission should only be granted "when justice so requires." Fed. R. Civ. P. 15(a). An amendment should be denied when there is a valid justification for the denial. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006). Any request for discovery to alter the allegations contained in Plaintiff's Petition would run directly afoul of controlling United States Supreme Court precedent. In *Twombly* and *Iqbal*, the Supreme Court made clear that a plaintiff who fails to meet the pleadings requirements of Rule 8(a)(2) at the outset should not be allowed to conduct discovery in hope of unearthing evidence to support a claim against the defendant. *See Iqbal*, 129 S. Ct. at 1954 ("Because [plaintiff's] complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); *Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management' . . ."). Plaintiff has presented no plausible claim against Defendants and, as such, Defendants should not be subjected to costly discovery obligations. *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007) (stating that a "12(b)(6) inquiry focuses on the allegations in the pleadings, not whether a plaintiff actually has sufficient evidence to succeed on the merits").

In this case, the Court should exercise its broad discretion to dismiss the claims against Defendants with prejudice and without leave to amend. Plaintiff has filed a Petition full of conclusory allegations and devoid of almost any specific allegations against Defendants or factual support therefor. It would be patently unfair to force Defendants to defend this matter and

to allow Plaintiff to use this insufficiently pleaded cause of action as a ticket to conduct a fishing expedition in hopes that he may later be able to set forth a claim that passes muster under Rule 12(b)(6).

## III. CONCLUSION

For the reasons set forth above, all of Plaintiff's claims against Defendants are preempted under LPLA and fail to state a claim for redhibition do not meet the pleading requirements under the plain language of the Federal Rules of Civil Procedure, fail to state a claim, and are preempted by the LPLA. Accordingly, Defendants respectfully request that the Court grant with prejudice their motion to dismiss the Petition for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and 8.

Respectfully submitted,

**Adams and Reese LLP**

*/s/ Diana Cole Surprenant*
E. PAIGE SENSENBRENNER (#18429) – T.A.
DIAN COLE SURPREANT (#33399)
One Shell Square
701 Poydras, Suite 4500
New Orleans, Louisiana 70139
paige.sensenbrenner@arlaw.com
diana.surprenant@arlaw.com
(504) 581-3234 (telephone)
(504) 553-9489 (facsimile)

Grant J. Guillot (#32484)
450 Laurel Street, Suite 1900
Baton Rouge, Louisiana 70801
Telephone: (225) 336-5200
Facsimile: (225) 336-5220
grant.guillot@arlaw.com

*Attorneys for Defendants,*
*AstraZeneca Pharmaceuticals LP, AstraZeneca*
*LP, and Merck Sharp & Dohme Corporation*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 2, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I sent a copy of the foregoing by First Class Mail to counsel for Plaintiff.

*s/ Diana Cole Surprenant*
DIANA COLE SURPRENANT