**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

STANLEY P. BAUDIN                        NO. 18-1063

V.                                                JUDGE SHELLY D. DICK

ASTRAZENECA PHARMACEUTICALS LP;       MAG. JUDGE ERIN
ASTRAZENECA LP; AND MERCK SHARP        WILDER-DOOMES
& DOHME CORPORATION

<u>**RULING**</u>

This matter is before the Court on the *Motion to Dismiss*[1] by Defendants, AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and Merck Sharp & Dohme Corporation ("Defendants"). Plaintiff, Stanley P. Baudin ("Plaintiff"), has filed an *Opposition*[2] to which Defendants *replied*.[3] Oral argument is not necessary. For the following reasons, the Court finds that Defendants' motion should granted in part, denied in part, and Plaintiff will be allowed to amend his Complaint within 30 days to cure the deficiencies as to his state law claims.

**I. FACTUAL BACKGROUND**

Plaintiff brings this lawsuit after suffering from gastric cancer and severe personal injuries and other damages allegedly as a result of taking the prescription drug Nexium.[4] Defendants are the alleged designers, researchers, manufacturers, testers, advertisers, promoters, marketers, sellers, and distributers of Nexium.[5] Generally, Plaintiff claim that

---

[1] Rec. Doc. No. 8.
[2] Rec. Doc. No. 21.
[3] Rec. Doc. No. 25.
[4] Rec. Doc. No. 1-1, p. 1.
[5] *Id.*
52855

Defendants negligently represented that Nexium was tested and found to be safe and effective for treating peptic disorders. Defendants allegedly knew and concealed that Nexium was defective as it allegedly causes gastric cancer.[6] Plaintiff alleges in abundant detail: the genesis of Nexium;[7] what it is prescribed for;[8] the difference between "PPI's", including Nexium, and "H2 antagonists";[9] the stomach and digestive system;[10] the physiology of gastric acid and gastrin;[11] how PPI's affect the stomach and digestive system and cause gastric cancer;[12] what gastric cancer is;[13] the epidemiology between PPI's and gastric cancer;[14] the scientific studies supporting these allegations;[15] and how Defendants allegedly concealed this information to manufacture, market, and sell Nexium as a safe pharmaceutical to treat peptic disorders.[16]

Plaintiff originally instituted this suit in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, which was removed to this Court based on diversity jurisdiction.[17] Plaintiff asserts state law claims of fraud, negligent misrepresentation, and redhibition based on non-economic losses. Plaintiff also asserts claims under the Louisiana Products Liability Act ("LPLA"), and asserts a redhibition claim under Louisiana law for economic losses.[18] This Court has jurisdiction over this matter pursuant to 28

---

[6] Rec. Doc. No. 1-1, p. 2.
[7] Rec. Doc. No. 1-1, pp. 6-8.
[8] Rec. Doc. No. 1-1, p. 7.
[9] Rec. Doc. No. 1-1, pp. 6-10.
[10] Rec. Doc. No. 1-1, p. 9.
[11] Rec. Doc. No. 1-1, pp. 9-12.
[12] Rec. Doc. No. 1-1, pp. 12-16.
[13] *Id.*
[14] Rec. Doc. No. 1-1, pp. 16-27.
[15] *Id.*
[16] *Id.*
[17] Rec. Doc. No. 1.
[18] Rec. Doc. No. 1-1.

52855

U.S.C. § 1332. Because subject matter jurisdiction in this case is based on diversity of citizenship, the substantive law of Louisiana governs this dispute.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[19] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[20] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[21] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[22] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[23] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[19] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[20] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[21] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin,* 369 F.3d at 467).
[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
52855

alleged."[24]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[25]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[26]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[27]

## B.    The LPLA

The LPLA establishes the exclusive theory of liability for manufacturers regarding damages caused by their products.  The applicable standard under the LPLA is as follows: "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."[28]  Thus, to maintain a successful claim under the LPLA, a claimant must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.[29]

---

[24] *Twombly*, 550 U.S. at 570.
[25] *Iqbal*, 556 U.S. at 678.
[26] *Taha v. William Marsh Rice University*, 2012 WL 1576099, at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[27] *Twombly*, 550 U.S. at 556 (quoting *Papassan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[28] La. R.S. 9:2800.54(A).
[29] *Ayo v. Triplex, Inc.*, 457 Fed. Appx. 382, 385-86 (5th Cir. 2012)(citing *Jack v. Alberto-Culver USA, Inc.*, 949 So.2d 1256, 1258 (La. 2007))(citing La. R.S. 9:2800.54(A)).
52855

A product is "unreasonably dangerous" under the LPLA in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) failure to conform to an express warranty.[30] The "unreasonably dangerous" characteristic must exist at the time the product left the manufacturer's control or result from a reasonably anticipated modification or alteration of the product.[31] An unreasonably dangerous condition cannot be presumed solely from the fact that injury occurred.[32] Rather, the claimant has the burden of proving the required elements under the LPLA.[33]

### 1. The LPLA is Exclusive

As an initial matter, Defendants correctly argue that all of the non-LPLA claims against it for fraud, negligent misrepresentation, and redhibition based on non-economic losses must be dismissed.[34] The LPLA establishes the exclusive theory of liability for manufacturers for damages caused by their products.[35] "A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in" the LPLA.[36] Plaintiff concedes this point and "requests leave to amend his Complaint to remove such references to barred claims".[37] Therefore, any claims of state law for fraud,[38] negligent misrepresentation, and redhibition based on non-economic

---

[30] La. R.S. § 9:2800.54(B).

[31] *Id.* at § 2800.54(C).

[32] *Woodling v. Hubbell Inc.*, 35 Fed. Appx. 386, *4 (5th Cir. 2002)(citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000))(quoting *McCarthy v. Danek Med., Inc.*, 65 F.Supp.2d 410, 412 (E.D. La. 1999)).

[33] La. R.S. 9:2800.54(D).

[34] Rec. Doc. No. 8-1, pp. 3-5.

[35] La. R.S. 9:2800.52.

[36] *Id.*

[37] Rec. Doc. No. 21, p. 3.

[38] The Court notes that Defendants seek to dismiss all fraud allegations under Rule 9 at page 17 of their motion. Rec. Doc. No. 8-1, p. 17. Because this Court is dismissing Plaintiff's claim of fraud due to the exclusivity of the LPLA, the Court elects not to specifically address Defendants' alternative arguments under Rule 9. As Plaintiff is granted leave to amend his Complaint, the Court will allow Defendants to re-urge their arguments under Rule 9, if necessary, once Plaintiff amends his Complaint.

52855

losses are improper and are dismissed with prejudice. The Plaintiff's motion for leave to amend to remove reference to the dismissed claims is unnecessary and therefore denied.

2.  Sufficiency of Pleading Claims under the LPLA

Defendants argue that Plaintiff fails to plead a viable LPLA claim with sufficient specificity to state a claim upon which relief may be granted.[39] Plaintiff contends that the Complaint "contains the requisite factual allegations to state viable claims under the LPLA, including claims for (a) design defect; (b) failure to warn; (c) breach of warranty; and (d) redhibition".[40] The Court considers Plaintiff's pleading of each of these claims under the LPLA.

a.  *Design Defect*

Under Section 9:2800.56 of the LPLA, a product is unreasonably dangerous in its design if, when the product left the manufacturer's control: (1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

This test requires a plaintiff to prove both "that an alternative design existed" at the time the product was manufactured and "that the risk avoided by using the alternative design (magnitude of damage discounted by the likelihood of its occurrence) would have exceeded the burden of switching to the alternative design (added construction costs and

[39] Rec. Doc. No. 8-1, p. 5 (citing *Twombly/Iqbal* standard).
[40] Rec. Doc. No. 21, p. 4.
52855

loss of product utility)."[41]  The occurrence of an injury does not give rise to the presumption that the design was unreasonably dangerous.[42]  A conclusory allegation that an alternate design exists will not suffice, but the plaintiff need not allege in detail "that the product's design would cause the claimant's damage," that "the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design," and "the adverse effect, if any, of such alternative design on the utility of the product."[43]

Plaintiff's complaint alleges that "alternative safer methods" existed for treating his peptic disorder "that provided the same benefits but acted through a different mechanism and were not associated with stomach cancer".[44]  Plaintiff contends that one "safer alternative" is "the class of drugs collectively known as the H2 antagonists, also called H2 blockers", which includes Tagamet, Tagamet HB, Pepcid, Pepcid AC, Axid, and Zantac.[45]  Plaintiff specifically alleges that Defendants are liable for defects in the design of its medication.[46]  Plaintiff pleads its "First Claim for Relief" as a "design defect" claim "under LSA-RS 9:2800.56",[47] including a specific plea of a "safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Nexium", such as other medications which had a "more established profile and a considerably lower risk profile".[48]

---

[41] *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 700-01 (5th Cir. 2012)(citing *Lawrence v. Gen. Motors Corp.*, 73 F.3d 587, 590 (5th Cir. 1996)).
[42] *Kennedy v. Pfizer, Inc.*, No. 12-01858, 2013 WL 4590331, *3 (W.D. La. Aug. 28, 2013).
[43] *Becnel v. Mercedes-Benz USA, LLC*, No. 14-0003, 2014 WL 4450431, *4 (E.D. La. Sept. 10, 2014)(finding sufficient plaintiff's allegations that the defendant used an alternative design in the past before implementing the new, defective design).
[44] Rec. Doc. No. 1-1, p. 27, ¶ 148.
[45] Rec. Doc. No. 1-1, p. 27, ¶ 149.
[46] Rec. Doc. No. 1-1, p. 30, ¶ 161(e-f).
[47] Rec. Doc. No. 1-1, pp. 30-33, ¶¶ 162-183.
[48] Rec. Doc. No. 1-1, p. 32, ¶ 177.
52855

Defendants contend that Plaintiff's allegations fail to state a claim for design defect because Plaintiff relied on "nothing more than statutory buzz words" which are "clearly legal conclusions" that are within the "sole province of the trier of fact".[49] Further, Defendants argue that Plaintiff's allegations "fail to explain how any particular Defendant's [sic] specific product was allegedly defective or what attributes of each Defendant's product [sic] made it unreasonably dangerous".[50] Defendants argue that Plaintiff fails to adequately plead the alternative design and that "merely referencing other products is not sufficient to establish an alternative design".[51] Similarly, Defendants argue that Plaintiff makes purely conclusory allegations that the gravity of the harm outweighed the burden of adopting an alternative design.[52]

In opposition, Plaintiff argues that his Complaint is "replete with factual allegations that explain the action mechanism of Nexium upon ingestion, and how that process modifies certain cells in the stomach over time which results in a significantly increased risk in the development of stomach cancer".[53] Indeed, the Complaint reflects detailed factual allegations of the evolution of Nexium and the conditions it was designed to treat;[54] an explanation of "the stomach and digestion";[55] an explanation of the balance between "gastric acidity and gastrin";[56] identifies Nexium as a proton pump inhibitor or PPI; a

---

[49] Rec. Doc. No. 8-1, p. 6.
[50] *Id.*
[51] Rec. Doc. No. 8-1, p. 7 (citing *Robertson v. AstraZeneca Pharms., LP*, 2015 U.S. Dist. LEXIS 136308, *11 (E.D. La. Oct. 6, 2015)).
[52] Rec. Doc. No. 8-1, pp. 7-8 (citing *Purvis v. Procter & Gamble Co.*, 901 F.Supp.2d 716, 721 (M.D. La. 2012)).
[53] Rec. Doc. No. 21, p. 5 (citing Rec. Doc. 1-1, ¶¶ 50-150).
[54] Rec. Doc. No. 1-1, pp. 6-8, ¶¶ 31-49.
[55] Rec. Doc. No. 1-1, p. 9, ¶¶ 50-53.
[56] Rec. Doc. No. 1-1, pp. 9-12, ¶¶ 54-68.
52855

description of what PPI's are;[57] general background of gastric cancer;[58] the purported relationship of PPI's and gastric cancer;[59] the studies purporting to support a link between the use of PPI's and gastric cancer;[60] and the alleged link between Defendants, their product, and gastric cancer.[61]

Here, Plaintiff has alleged an alternative design existed that would not have caused his injury, gastric cancer.[62]  Plaintiff alleges that "other medications", such as Axid, Pepcid, Pepcid AC, Tagamet, and Tagamet HB, otherwise known as "H2 receptor antagonists", have lower risks, are "safer" than Nexium or PPI's, are prescribed for the same conditions as PPI's, and have not been associated with gastric cancer.[63]

In *Robertson v. AstraZeneca Pharmaceuticals, LP*,[64] upon which Defendants rely in support of their motion to dismiss Plaintiff's design defect claim, the court found that the existence of alternate products does not demonstrate the existence of a specific alternate design and granted the defendant's motion to dismiss the plaintiff's design defect claim.[65]  However, in *Robertson*, the plaintiff simply alleged what was prescribed to her, her experienced side effects, and other pharmaceuticals on the market that are available to treat the same condition.[66]  The plaintiff in *Robertson* did not allege the science and epidemiology behind the purported defect in the pharmaceutical at issue and

---

[57] Rec. Doc. No. 1-1, pp. 11-12, ¶¶ 62-68.
[58] Rec. Doc. No. 1-1, pp. 12-13, ¶¶ 69-72.
[59] Rec. Doc. No. 1-1, pp. 13-16, ¶¶ 73-88.
[60] Rec. Doc. No. 1-1, pp. 16-27, ¶¶ 89-150.
[61] Rec. Doc. No. 1-1, pp. 22-27, ¶¶ 126-150.
[62] *See Jenkins v. Bristol-Myers Squibb*, No. 14-2499, 2015 WL 5012130, *4 (E.D. La. Aug. 21, 2015)("Plaintiff must nevertheless allege that an alternative design existed that would not have caused Plaintiff's injuries.").
[63] Rec. Doc. No. 1-1, ¶¶ 66, 89, 110-11, 148-49, 177.
[64] *Robertson*, 2015 WL 5823326.
[65] *Id.* at *4.
[66] *Id.* at *1.
52855

identify how the design of the other identified pharmaceuticals differed. Here, Plaintiff makes detailed allegations of the purported defect in the design of Nexium, how that purported defect is scientifically linked to gastric cancer, the other alternative pharmaceuticals that exist for the same underlying condition, how those pharmaceuticals are designed differently, and generally alleges that there is no scientific data linking the alternative pharmaceuticals to gastric cancer. For these reasons, *Robertson* is distinguished from the pleading presently before the Court.

This Court has found that a complaint sufficiently pleads a design defect claim by alleging an alternative design in general terms, including the general characteristics of the alternative design. *See, Boutte v. Stryker Biotech, LLC,*[67] where this Court denied a motion to dismiss where the alleged alternative design was to promote the pharmaceutical as approved by the FDA and to not permit its combination with other specific pharmaceuticals; *Crochet v. Bristol-Myers Squibb,*[68] where this Court found the plaintiff's allegation that the defendants "failed to consider the design of other available drugs that could treat [plaintiff's] condition that did not have, or had a much lower incidence and risk of developing [the subject side effect] following treatment" sufficient to state a design defect claim; and *Brooks v. Amgen, Inc.*,[69] where the Court acknowledged the "barebones" allegations of the complaint but found that the plaintiff "at least implicitly plead an alternative design – Prolia or any other medication for osteoporosis that does not cause jaw necrosis" as sufficient to deny a motion to dismiss. On the other hand, this Court has found a failure to state a claim of defective design when there are no allegations

---

[67] *Boutte v. Stryker Biotech, LLC*, 67 F.Supp.3d 732, 736-37 (M.D. La. Dec. 22, 2014).
[68] *Crochet v. Bristol-Myers Squibb,* 2016 WL 3580670, *3 (M.D. La. June 28, 2016).
[69] *Brooks v. Amgen, Inc.*, 2019 WL 507491, *5 (M.D. La. Feb. 8, 2019).
52855

of alternative design or of any weighing of the likelihood and gravity of damages against the burden of adopting alternative designs.[70] Such is not the case here.

Further, this Court is mindful of its findings in *Lahaye v. AstraZeneca Pharmaceuticals*,[71] an LPLA case regarding the same prescription drug at issue in this matter, Nexium. In *Lahaye*, this Court found that the plaintiff "at least implicitly pled an alternative design – a medication that would not cause C. diff or lead the party who ingested Nexium to require a colectomy".[72] This Court denied the motion to dismiss in *Lahaye* and noted that "much of the evidence in pharmaceutical products liability cases may be in the defendant's possession, and thus, without the benefit of discovery, stating more specific allegations may be nearly impossible at this stage."[73]

Both parties address the second element of the design defect claim in a cursory fashion – the likelihood that the design of prescription Nexium would cause the harm complained of or that the gravity of that harm outweighed the burden of adopting the alternative design. Defendants simply argue that Plaintiff's allegations are conclusory and his claims should be denied.[74] Plaintiff, citing to his Complaint and the pages of allegations regarding the scientific support for the link between Nexium and gastric cancer and the lack of scientific support for the link between the alternative pharmaceuticals and gastric cancer, argues that the likelihood that the design of Nexium could cause gastric cancer "was great" and has been known "since the 1980s", and the gravity of developing

---

[70] *See, e.g., Morel v. Pinnacle Entertainment, Inc.*, 2017 WL 3719975, *4 (M.D. La. May 19, 2017).
[71] *Lahaye v. AstraZeneca Pharmaceuticals*, No. 14-00111, 2015 WL 1935947 (M.D. La. Apr. 28, 2015).
[72] *Id.* at *4.
[73] *Id.* at *5 (*see Winslow v. W.L. Gore & Assoc., Inc.,* No. 10-116, 2010 WL 866184, at *2 (W.D. La. Jan. 21, 2011)) *report and recommendation adopted as modified sub nom. Winslow v. W.L. Gore & Assoc., Inc.*, No. 10-116, 2011 WL 873562 (W.D. La. Mar. 11, 2011).
[74] Rec. Doc. No. 8-1, p. 8.
52855

gastric cancer "clearly outweighed the burden" to the Defendants of utilizing the alternate design found in the H2 receptor antagonist pharmaceuticals.[75]  As cited above, the Complaint reflects detailed pages of allegations of the relationship between PPI's and gastric cancer, unarguably a grave harm.  The Complaint sufficiently alleges that the risk of gastric cancer outweighs the burden of utilizing alternative H2 receptor antagonist pharmaceuticals in lieu of PPI's.[76]

Considering the Complaint, the arguments of the parties, and the jurisprudence, the Court finds the Complaint plausibly states a design defect claim under the LPLA.  The Defendants' Motion to Dismiss Plaintiff's design defect claim is DENIED.

### b.    Failure to Warn

To maintain a failure to warn claim under the LPLA, "a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic."[77]  The manufacturer is liable for an inadequate warning only if the defect proximately caused the plaintiff's injury.[78]  The plaintiff bears the burden of proving that "but for" the inadequate warning, the accident in question would not have occurred.[79]

In failure to warn cases, the law not only requires manufacturers to provide an adequate warning at the time the product left its control, if such warning is necessary to

---

[75] Rec. Doc. No. 21, p. 5.
[76] The Court acknowledges Defendants' argument on the design defect claim in reply to Plaintiff's opposition.  Rec. Doc. No. 25, pp. 2-4.  The Court finds that this detailed argument better targets the merits and substance of Plaintiff's claims as opposed to the factual pleading of the plausibility of Plaintiff's claims on the face of the Complaint.  These arguments, while well-made, would be more appropriate at the summary judgment stage of this matter.
[77] *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 264 (5th Cir. 2002).
[78] La. R.S. 9:2800.54(A); *see also, Wheat v. Pfizer*, 31 F.3d 340, 342 (5th Cir. 1994).
[79] *See Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990).
52855

apprise ordinary consumers of the danger,[80] it also demands they use reasonable care to provide adequate warnings after the product leaves its control.[81]  In prescription drug cases, the learned intermediary doctrine applies.[82]  In failure to warn claims against prescription drug manufacturers, therefore, the warning must adequately inform the prescribing physician of the risks involved in using the drug that was not otherwise known to the physician.[83]

Plaintiff's "Second Claim for Relief" is a claim of "inadequate warning under LSA-RS 9:2800.57".[84]  Plaintiff avers that Defendants "researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed, and/or introduced Nexium into the stream of commerce" and advertised or marketed Nexium to consumers and had a duty to Plaintiff and his physicians to warn of risks associated with the use of Nexium, including gastric cancer.[85]  Plaintiff alleges that Defendants had a duty to warn of adverse drug reactions, including the development of gastric cancer, which Defendants knew or should have known can be caused by Nexium.[86]  The Complaint states that Nexium was defective because it did not include adequate warnings "regarding all known and significant adverse side effects, including, but not limited to, the development of gastric cancer, associated with the use of Nexium", and the "warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of these side effects and, in particular, the risks of developing

---

[80] La. R.S. 9:2800.57(A)-(B).
[81] La. R.S. 9:2800.57(C).
[82] *Stahl*, 283 F.3d at 265.
[83] *Id.* at 265-66.
[84] Rec. Doc. No. 1-1, p. 33.
[85] Rec. Doc. No. 1-1, p. 34, ¶ 185.
[86] Rec. Doc. No. 1-1, p. 34, ¶ 186.
52855

gastric cancer".[87]  Plaintiff claims that Defendants failed to adequately warn physicians and users of the increased risk of developing gastric cancer, "although Defendants aggressively and fraudulently promoted the product to physicians".[88]  The alleged failure to warn prevented Plaintiff and his physicians from "correctly and fully evaluating the risks and benefits of Nexium".[89]  Had he been "adequately warned", Plaintiff alleges that he would not have taken Nexium.[90]  Plaintiff further alleges, that had his physicians been "adequately warned", they could have discussed the risks with Plaintiff or would not have prescribed it.[91]  Therefore, Plaintiff alleges that the failure of Defendants to warn Plaintiff and his physicians caused or was the proximate cause of Plaintiff's injuries and development of gastric cancer.[92]

Defendants argue that Plaintiff's *Complaint* fails to state a claim for failure to warn because the allegations are conclusory and, thus, insufficient.[93]  Specifically, Defendants argue that Plaintiff does not provide the warning or the name of his physician.[94] Defendants' argument focuses mainly on the element of causation.  Defendants argue that Plaintiff must show that a proper warning would have changed the decision of the treating physician.

In response, Plaintiff argues that the Complaint "specifically cited to language from Defendants' product insert for Nexium which failed to provide Plaintiff's physicians (and all physicians) with adequate risk information for the development or promotion of gastric

---

[87] Rec. Doc. No. 1-1, p. 34, ¶ 187.
[88] Rec. Doc. No. 1-1, p. 34, ¶ 188.
[89] Rec. Doc. No. 1-1, p. 35, ¶ 190.
[90] Rec. Doc. No. 1-1, p. 35, ¶ 191.
[91] Rec. Doc. No. 1-1, p. 35, ¶ 192.
[92] Rec. Doc. No. 1-1, p. 35, ¶ 193.
[93] Rec. Doc. No. 8-1, p. 9.
[94] Rec. Doc. No. 8-1, pp. 8-9.
52855

cancer from Nexium use".[95]   Plaintiff further argues that by alleging that "Plaintiff's prescribing physicians of Nexium", he sufficiently identified which physicians were not warned.[96]   Further, Plaintiff argues, citing to *Lahaye v. AstraZeneca Pharm., LP*, that the failure to identify a physician by name is not dispositive of this issue.[97]   Finally, Plaintiff argues that it is premature to determine the learned intermediary issue at this stage of the litigation, and Plaintiff's allegations should be accepted as true.[98]

The Court finds that the Plaintiff's allegations plausibly state a failure to warn claim. Plaintiff pleads in his Complaint:

126.

To date, Defendants' prescription Nexium lacks adequate risk information for stomach adenocarcinomas, despite science stating otherwise.   The June 2018 product insert for Nexium merely advises prescribers (and patients) that '… *the symptomatic response to therapy does not preclude the presence of gastric malignancy.   Consider additional follow-up and diagnostic testing in adult patients who have suboptimal response or an early symptomatic relapse after completing treatment with a PPI.   In older patients also consider an endoscopy.*'  In other words, symptom relief could cloud a 'pre-existing malignancy'.   No language exists which warns the prescribers and patients of the epidemiological and biological evidence linking the long-term use of PPIs and the development of gastric cancer.

127.

In addition, the June 2018 'HIGHLIGHTS OF PRESCRIBING INFORMATION' product insert adds, 'Interactions with *Diagnostic Investigations for Neuroendocrine Tumors: Increased chromogranin A (CgA) levels may interfere with diagnostic investigations for neuroendocrine tumors, temporarily stop NEXIUM at least 14 days before assessing CgA levels.*'[99]

---

[95] Rec. Doc. No. 21, p. 8 (citing Rec. Doc. No. 1-1, ¶¶ 126-131).
[96] *Id.*
[97] *Lahaye*, 2015 WL 1935947, at *5.
[98] Rec. Doc. No. 21, p. 9.
[99] Rec. Doc. No. 1-1, pp. 22-23, ¶¶ 126, 127.
52855

The Court notes that the argument before the Court on Defendants' Rule 12(b)(6) motion to dismiss is that Plaintiff did not plead the terms of the warning that is allegedly insufficient. However, the sufficiency of the warning is not before the Court at this motion to dismiss stage. When the quoted "warning" is considered in the context of the extensive facts plead in the Complaint, Plaintiff's pleading allows the Court to draw the reasonable inferences necessary to determine the plausibility of Plaintiff's claim.

The Court now turns to Defendants' argument that Plaintiff does not sufficiently identify the physicians who prescribed Nexium to Plaintiff. Defendants are correct that the Complaint does not reflect the name of Plaintiff's physicians. Plaintiff makes general references to his physicians,[100] prescribing health care professionals,[101] and prescribers.[102] However, Plaintiff is not required to identify his treating physician by name, even though such information is within the Plaintiff's knowledge. Further, "healthcare providers" has been found to satisfy pleading standards under Rule 12(b)(6).[103]

Defendants' final and dominant argument is that Plaintiff has not sufficiently plead causation. The Court notes that the primary case upon which Defendants rely in their motion is *Jenkins v. Bristol-Myers Squibb*.[104] In this case, the defendants moved to dismiss the plaintiff's failure to warn claim on the same grounds and making the same argument as Defendants advance here. The *Jenkins* court denied the defendants' motion

---

[100] Rec. Doc. No. 1-1, p. 23, ¶ 130.
[101] Rec. Doc. No. 1-1, p. 28, ¶ 154.
[102] Rec. Doc. No. 1-1, p. 24, ¶ 137.
[103] *Jenkins*, 2015 WL 5012130 at *5 ("The Court agrees with Plaintiff that the 12(b)(6) standard does not require Plaintiff to identify his treating physician, even though such information is with the Plaintiff's knowledge."); and *Harris v. Merck & Co., Inc.*, 2012 WL 5384720, *4 (W.D. La. Nov. 1, 2012)("[W]e do not find that plaintiff is required to disclose the name of a particular physician in her complaint. Merck cites no authority, nor are we aware of any, requiring that a specific physician be identified by name in the pleadings.").
[104] *Jenkins*, 2015 WL 5012130.
52855

and found that the plaintiff sufficiently plead the second element of the learned intermediary doctrine. In *Jenkins*, the plaintiff alleged: "If defendants had properly warned of the severity of Tardive Dyskinesia, of the importance of properly monitoring patients using Abilify to prevent the onset of Tardive Dyskinesia, and informed health care providers of what periodic monitoring tests were necessary, Plaintiff would not have contracted Tardive Dyskinesia."[105] In rejecting the *Jenkins* defendants' arguments on this issue and finding that the quoted allegation was sufficient, the *Jenkins* court stated:

> To allege a failure-to-warn claim upon which relief can be granted under the LPLA, Plaintiff is not required to detail what an adequate warning would be and how an adequate warning would have caused Plaintiff's treating physician to act differently. Plaintiff is merely required to allege that Defendants did not adequately warn Plaintiff's treating physician and that the inadequate warning constituted the proximate warning [or cause] of Plaintiff's injuries.[106]

Here, Plaintiff's allegations are much more detailed than that in *Jenkins*. Plaintiff alleges what the current warning states and alleges what the proper warning should contain or how the current warning is inadequate.[107] Plaintiff also specifically alleges that had Defendants issued an adequate warning, Plaintiff's physicians could have discussed the risks of gastric cancer with Plaintiff and/or would not have prescribed it and that Plaintiff would not have taken the Nexium.[108] Plaintiff explicitly alleges that Plaintiff's physician would have acted differently with a proper warning. The Court finds that Plaintiff has sufficiently alleged that Defendants did not adequately warn Plaintiff and his treating physicians and that the allegedly inadequate warning constituted the proximate cause of

---

[105] *Jenkins*, 2015 WL 5012130, at *5.
[106] *Id.*
[107] Rec. Doc. No. 1-1, pp. 22-23, ¶¶ 126, 127.
[108] Rec. Doc. No. 1-1, p. 35, ¶¶ 191-193.
52855

Plaintiff's injuries. Thus, the Court denies Defendants' motion to dismiss Plaintiff's failure to warn claim.

c. *Breach of Express Warranty*

To state a viable claim that a product is "unreasonably dangerous because of nonconformity to express warranty," a plaintiff must demonstrate that (1) an express warranty existed, (2) he or she was induced to purchase the product due to the warranty, and (3) his or her damage was proximately caused because the express warranty was untrue.[109]

Plaintiff alleges that Defendants "expressly warranted that Nexium was safe and well accepted by users".[110] Plaintiff and his physicians "relied on Defendants' express warranties" and the express warranties "were a part of the basis for Plaintiff's and Plaintiff's physicians use of Nexium and he relied upon these warranties in deciding to use Nexium".[111] Plaintiff avers that Defendants breached the express warranties because Nexium "was and is defective and causes harm and injury".[112] Specifically, Plaintiff alleges that as a "direct and proximate result of the breach of these warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, disfigurement, losses, and damages".[113] Plaintiff continues with allegations that Defendants had knowledge of the purpose of Nexium and warranted it to be safe, effective, and proper for such use.[114] Defendants allegedly warranted that Nexium was

---

[109] La. Rev. Stat. Ann. § 9:2800.58.
[110] Rec. Doc. No. 1-1, p. 36, ¶ 196.
[111] Rec. Doc. No. 1-1, p. 36, ¶ 199.
[112] Rec. Doc. No. 1-1, p. 36, ¶ 200.
[113] Rec. Doc. No. 1-1, p. 36, ¶ 198.
[114] Rec. Doc. No. 1-1, p. 36, ¶ 201.
52855

"safe and fit for use for the purposes intended", "of merchantable quality", "did not produce any dangerous side effects", "that side effects were accurately reflected in the warnings" and that this was "false and misleading".[115]

Defendants' arguments in support of dismissing Plaintiff's breach of express warranty claim mirror those advanced in support of dismissing Plaintiff's failure to warn claim: that the specific warranty was not alleged; that the allegations are "boilerplate" and conclusory; that Plaintiff does not identify the materials where the warranty appears; and that Plaintiff does not specify that the warranty prompted any particular physician to prescribe Nexium.[116]  In response, Plaintiff argues that his pleading was sufficient, citing to the specific paragraphs in the Complaint alleging the warranty, facts supporting the express warranty and alleged breach of same, the inducement to prescribe and use the product, and the cause of his damages.[117]

First, it is unnecessary for Plaintiff to cite to a specific express warranty.[118]  Even without the legal requirement to do so, Plaintiff alleges that the Defendant manufacturer expressly warranted Nexium as "safe".  Defendants rely upon *Robertson v. AstraZeneca Pharmaceuticals, LP*,[119] in which the plaintiff simply and generally plead that the defendant "expressly warranted that Seroquel is a safe, effective product that can be used for the treatment of depressive episodes of bipolar disorder" and that this warranty was located on "materials presented to the FDA".[120]  The *Robertson* court found that "[w]hile

---

[115] Rec. Doc. No. 1-1, pp. 36-37, ¶¶ 202-203.
[116] Rec. Doc. No. 8-1, pp. 10-11.
[117] Rec. Doc. No. 21,  pp. 10-11.
[118] *See, Boutte v. Stryker Biotech, LLC*, 67 F.Supp.3d 732, 739 (M.D. La. Dec. 22, 2014)(citing *Kennedy*, 2013 WL 4590331 at *5).
[119] *Robertson*, 2015 WL 5823326.
[120] *Id.* at *5.

52855

Plaintiff is not required to quote the specific language of the warranties, she must make more than a general reference to them. The reference to 'materials presented to the FDA' is not specific enough to survive a Rule 12(b)(6) motion to dismiss".[121] However, in the matter presently before the Court, Plaintiff accompanied his plea of an express warranty that Nexium was "safe and well accepted by users" with allegations that Nexium failed to conform to these representations, specific allegations of the side effects of Nexium that made it unsafe and unacceptable, and details allegations of the correlation between Nexium and gastric cancer. The distinction between this matter and *Robertson* is that Plaintiff alleges with specificity the scientific literature available regarding Nexium and gastric cancer, the purported knowledge of Defendants of this correlation, how this information allegedly renders the product unsafe and unacceptable, contrary to the representations allegedly made by Defendants.

Further, the Court has not been provided with, nor is it aware of, binding or persuasive authority that the express warranty must appear in a certain location and/or that Plaintiff must specifically allege where the warranties appear. Defendants again rely on the same general, vague language from *Robertson*, as quoted above. The Court does not read the *Robertson* court's finding that the reference to "materials presented to the FDA" as not being specific enough to require all plaintiffs to specifically allege where warranties appear. Plaintiff in this matter alleges a scheme of promoting Nexium as safe and effective while simultaneously having knowledge that Nexium has been allegedly associated with developing gastric cancer. Plaintiff alleges that Defendants represented

---

[121] *Id.*

52855

to the medical community, prescribing physicians, and the public that Nexium was tested and safe and effective, despite alleged knowledge to the contrary.  This pleading of a broad scheme is similar to that plead in *Boutte v. Stryker Biotech, LLC*. [122] There, this Court stated, "[i]n fact, Boutte's petition alleges what amounts to an 'elaborate scheme' by Styker to promote Calstrux as the 'preferred' and 'perfect carrier for OP-1,' and assuring the medical community that the combination was 'safe and effective,' while knowing that the combined use of the products remained untested, ineffective, and unsafe."[123]

Considering Plaintiff's allegations as true and in a light favorable to the Plaintiff, Plaintiff's factual pleading of his breach of express warranty claim is sufficient and more in line with this Court's findings in *Boutte v. Stryker Biotech, LLC,*[124] than those of *Robertson v. AstraZeneca*.[125]  The Court denies Defendants' motion with respect to the breach of express warranty claim.

### C.    Redhibition

Under Louisiana law, a buyer has a warranty "against redhibitory defects, or vices, in the thing sold.  A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect."[126]  Such a defect may give a buyer the right to obtain rescission of the sale, or, if the buyer would have still bought the product but for a lesser price, a

---

[122] *Boutte,* 67 F.Supp.3d at 739.
[123] *Id.*
[124] *Id.*
[125] *Robertson*, 2015 WL 5823326, at *5.
[126] La. Civ. Code Ann. Art. 2520.

52855

reduction of the purchase price.[127] If a seller is deemed to be in "bad faith," a buyer can also recover damages and attorneys' fees.[128] The Louisiana Civil Code makes clear that recovery under a theory of redhibition is limited to purely economic loss and not recovery for personal injury.[129]

Based on the foregoing as well as the established principle that the "LPLA subsumes all possible causes of action [against a manufacturer] with the exception of redhibition",[130] the Court turns to whether Plaintiff sufficiently plead a claim of redhibition and whether similar claims have been allowed to proceed beyond the Rule 12 motion to dismiss stage.

Defendants contend that the only exception to the LPLA's exclusivity provision is a redhibition claim for damage to a product itself or economic loss.[131] Defendants argue that Plaintiff failed to sufficiently state a claim of redhibition based on damage to a product or economic loss.[132] Defendants summarized their argument regarding Plaintiff's redhibition claim as, "the Petition fails to provide any factual information about the seller or how, as alleged, Nexium is useless for its intended purpose or so inconvenient as judged by the reasonable person standard. In fact, the allegations pled in the Petition suggest the contrary as Plaintiff claims to have used Nexium for 15 years, further

---

[127] *Id.*

[128] La. Civ. Code Ann. Art. 2545.

[129] *Alexander v. GlaxoSmithKline*, LLC, 2015 WL 5440994, *5 (E.D. La. Sept. 14, 2015)(citing *Jefferson v. Lead Indus. Ass'n, Inc.,* 106 F.3d 1245, 1251 (5th Cir. 1997)).

[130] *Marks v. Westwind Helicopters, Inc.*, 2016 WL 5746292, n. 3 (W.D. La. Jan. 20, 2016)(citing *Nelson v. Mylan Pharmaceuticals, Inc.*, 2010 WL 3339274, *3 (W.D. La. Aug. 3, 2010).

[131] Rec. Doc. No. 8-1, p. 11 (citing *Hollybrook Cottonseed Processing, LLC v. Carver*, Inc., No. 09-0750, 2010 WL 2195685, *4 (W.D. La. May 28, 2010)(citing La. Rev. Stat. art. 9:2800.53(5); *Aucoin v. Southern Quality Homes, LLC*, 2007-1014, p. 7, n. 8 (La. 2/26/08); 984 So.2d 685, 691)).

[132] Rec. Doc. No. 8-1, p. 12.

52855

suggesting that the product assisted Plaintiff. Likewise, the Petition fails to detail how the product is allegedly defective."[133]

Plaintiff does not admit that he did not claim damage to a product, but he does not address his allegation for damage to a product in his Complaint. He argues that sufficiently plead the facts of a redhibition claim due to the defect in Nexium that causes gastric cancer and the fact he would not have used Nexium had he known of this defect.[134] Plaintiff argues that he plead economic loss due to redhibition "in the form of a return of the purchase price he paid for Nexium, a return of insurance co-payments paid for Nexium, interest on these amounts from the dates of purchase, and attorneys' fees and costs".[135]

As set forth above, the Complaint alleges: detailed facts about the sellers of Nexium (all of the named Defendants);[136] that scientific literature and studies support findings that Nexium, a PPI, causes or develops gastric cancer; that there is a correlation between the use of Nexium and the development of gastric cancer; that this information is known to Defendants; that the current warnings and/or warranties contained in the product literature do not state that a user of Nexium may develop gastric cancer or that this has been found to occur in the past; and that had Plaintiff and his prescribing physicians known this, then Nexium would not have been used and/or prescribed.[137] For the same reasons stated above, the Court finds that Plaintiff meets the Rule 12(b)(6) standard in pleading an alleged defect in Nexium.

---

[133] Rec. Doc. No. 8-1, p. 13.
[134] Rec. Doc. No. 21, p. 12.
[135] Rec. Doc. No. 21, p. 13 (citing La. C.C. art. 2545; Rec. Doc. No. 1-1, ¶ 212).
[136] Rec. Doc. No. 1-1, pp. 3-6.
[137] Rec. Doc. No. 1-1, pp. 6-29.
52855

Also, a simple review of the Complaint reveals that Plaintiff seeks economic loss due to redhibition.[138]

In Harris v. Merck & Co., Inc.,[139] Western District Court of Louisiana considered plaintiff's products liability claims under the LPLA as well as a redhibition claim adverse to the pharmaceutical manufacturer. In a very brief address of plaintiff's redhibition claim, the Harris court stated:

> [T]he LPLA allows for a redhibition claim only to the extent that plaintiff seeks recovery of economic losses. Merck asserts that plaintiff's redhibition claim must fail because plaintiff's complaint fails, as argued above, to state a claim for defect. Having already deemed plaintiff's complaint sufficient as stating a claim for design defect under the LPLA, we also reject this argument relating to redhibition and find that plaintiff's redhibition claim should be preserved for further proceedings. Accordingly, Merck's motion will be denied in this respect.[140]

A similar finding was made in Nelson v. Mylan Pharmaceuticals, Inc.,[141] as well as by this Court in Boutte v. Stryker Biotech, LLC.[142]

Based on the allegations in the Complaint and the general challenges to Plaintiff's redhibition claim, the Court finds that Plaintiff has plead enough facts to state a claim to relief that is plausible on its face. Plaintiff pleads not only the essential elements of a redhibition claim, but also seeks the appropriate relief of economic damages and pleads the factual content that allows the Court to draw the reasonable inference that the Defendants may be liable for the misconduct alleged. Further, district courts in Louisiana

---

[138] Rec. Doc. No. 1-1, ¶ 212
[139] Harris, 2012 WL 5384720 at *6.
[140] Id.
[141] Nelson, 2010 WL 3339274 report and recommendation adopted by, No. 10-0591, 2010 WL 3363039 (W.D. La. Aug. 24, 2010).
[142] Boutte, 67 F.Supp.3d at 740.

52855

have similarly preserved redhibition claims for further proceedings, as set forth above. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's redhibition claim.

### D.    Plaintiff's Claims under Rule 8

Defendants argue that Plaintiff's claims should be dismissed for the independent reason that Plaintiff fails to satisfy the requirements of Rule 8 of the Federal Rules of Procedure.  Rule 8(a) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim showing that the plaintiff is entitled to relief. A complaint must set forth a short and plain statement of the facts upon which the claim is based that is sufficient to give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest.[143] An analysis of a challenge of the pleading of claims under Rule 8 is the same as that under Rule 12(b)(6) under *Twombly and Iqbal* and has been addressed above.

Overall, Defendants' argument in support of their motion under Rule 8 are the same as their arguments on each of Plaintiff's claims addressed above.  Defendants maintain their theme of Plaintiff's overly-general pleading and use of conclusory terms and alleged recitation of elements of their claims.[144]  The Court finds Defendants' motion under Rule 8 redundant in this respect.

For the reasons stated above, the Court finds that the Complaint herein satisfies the liberal requirements of Rule 8(a). Plaintiff makes distinct allegations as to the actions

---

[143] *See Williams v. United Credit Plan of Chalmette, Inc.*, 526 F.2d 713 (5th Cir. 1976); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
[144] Rec. Doc. No. 8-1, pp. 14-16.
52855

or inactions of Defendants.[145] Defendants' motion on the grounds of failure to comply with Rule 8(a) pleading requirements is denied.

## III.    CONCLUSION

For the reasons set forth above, the *Motion to Dismiss*[146] by Defendants, AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and Merck Sharp & Dohme Corporation, is **GRANTED IN PART** as to the exclusivity of the Louisiana Products Liability Act.  Plaintiff, Stanley P. Baudin, is granted leave of court to amend his *Complaint* within thirty (30) days of the date of this *Ruling* to cure the deficiencies as to his state law claims.

Defendants' motion is **DENIED IN PART** in all other respects.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>August 26, 2019</u>.


_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[145] The Court refers Defendants to the "Factual Background" section above which summarizes the categories of factual allegations of Plaintiff's *Complaint* along with specific citations to the pages of the *Complaint* where the allegations can be found.
[146] Rec. Doc. 8.
52855