**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| Stanley P. Baudin | ) | |
| | ) | Case No. 18-1063 |
| Plaintiff, | ) | |
| | ) | JUDGE SHELLY DICK |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| AstraZeneca Pharmaceuticals LP; | ) | ERIN WILDER-DOOMES |
| AstraZeneca LP; and Merck Sharp & | ) | |
| Dohme Corporation | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE REPORTS AND TESTIMONY OF DR. PATRICIA MJØNES, OR IN THE ALTERNATIVE, TO REDEPOSE DR. PATRICIA MJØNES**

**MAY IT PLEASE THE COURT**

Defendants, AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and Merck Sharp & Dohme Corporation (collectively "Defendants"), move to strike the report and testimony of Plaintiff's late-disclosed expert Dr. Patricia Mjønes or, alternatively, to continue Dr. Mjønes' deposition after submission of a proper expert report under Federal Rules of Civil Procedure 16(f)(1)(C), 26(a)(2), and 37(c)(1).

**PRELIMINARY STATEMENT**

Plaintiff Stanley Baudin failed to disclose Dr. Mjønes as a retained testifying expert until three months after this Court's deadline for doing so by serving an Amended Designation of Expert Witnesses ("Amended Expert Designation") purporting to designate her as a testifying expert while at the same time stating she will not appear live at trial and will instead impermissibly testify by video deposition. Additionally, Plaintiff failed to initially submit, and still has not submitted, an expert report from Dr. Mjønes that complies with Rule 26(a)(2)(B).

Plaintiff failed to comply with Rule 26(a)(2) despite Defendants' repeated requests that he clarify Dr. Mjønes' role after one of Plaintiff's timely disclosed experts, Dr. Helge Waldum, revealed his reliance on Dr. Mjønes in his own expert report. Defendants explicitly informed Plaintiff of their understanding based on the parties' communications that Dr. Mjønes was not an expert prior to Dr. Mjønes' deposition, and Plaintiff did nothing to correct that understanding. This Court should exercise its authority under Rules 16(f)(1C), 37(b)(2), and 37(c)(1) to strike Dr. Mjønes' report and to prohibit Plaintiff or his other experts from using Dr. Mjønes' expert opinions for any purpose.

Under the Court's scheduling orders and the parties' agreement, by January 14, 2022, Plaintiff was required to disclose the identity of any testifying expert witness—*i.e.*, any witness who Plaintiff "may use at trial to present evidence under Federal Rule of Evidence 702." Fed. R. Civ. P. 26(a)(2)(A). Plaintiff did not disclose Dr. Mjønes as a testifying expert by that deadline. Instead, Plaintiff identified five other retained testifying experts, and certain of Plaintiff's treating physicians as non-retained testifying experts. Among others, Plaintiff identified Dr. Waldum as an expert who Plaintiff expects to testify that Plaintiff's use of Defendants' prescription medicine, Nexium, can and did cause his gastric cancer. To form some of his opinions, Dr. Waldum relies on a pathology report signed by Dr. Mjønes, which Dr. Waldum attached as an appendix to his own expert report.

Given that Plaintiff had not identified Dr. Mjønes as a testifying expert under Rule 26(a)(2)(A) and that Dr. Mjønes' pathology report did not satisfy the requirements of Rule 26(a)(2)(B), Defendants sought to determine the nature and scope of Dr. Mjønes' involvement in this case on multiple occasions. While Plaintiff agreed to produce Dr. Mjønes for deposition, Plaintiff failed to clarify Dr. Mjønes' role. To the contrary, in advance of Dr. Mjønes' deposition,

Defendants informed Plaintiff's counsel in writing of their understanding based on the parties' communications that Plaintiff was not offering Dr. Mjønes as a testifying (or any type) expert.

Plaintiff did nothing to disabuse Defendants of that understanding until the eve of Dr. Mjønes' deposition, when, for the first time, Plaintiff described Dr. Mjønes as "a retained expert" and objected to the disclosure of communications between Dr. Mjønes and Plaintiff's counsel.[1] The following day, at Dr. Mjønes' deposition, Plaintiff's counsel characterized her as a "consulting expert." And, after Defendants examined Dr. Mjønes, Plaintiff's counsel conducted an apparent trial preservation direct examination to reveal Dr. Mjønes' qualifications and other opinions to a "reasonable degree of medical certainty" in response to her re-review of Plaintiff's pathology and opinions offered by Defendants' pathology expert—none of which were disclosed in her original pathology report. Nor did Plaintiff seek leave to submit a rebuttal pathology report.

Plaintiff also produced two additional copies of Dr. Mjønes' pathology report—one on the eve of her deposition and the other on the day of her deposition—with notations in Norwegian that purported to offer additional, previously undisclosed opinions. Given Plaintiff's late production of these copies containing Norwegian notes, Defendants had no meaningful opportunity to prepare to question Dr. Mjønes about them. Before the deposition concluded, Defendants' counsel stated that Plaintiff had turned Dr. Mjønes into a retained testifying expert during the deposition even though he had never identified her as such, and that Defendants would move to strike her pathology report and testimony.

It was only on April 12, 2022—more than three months after this Court's deadline for Plaintiff to disclose his expert witnesses and three weeks after Dr. Mjønes' deposition—that Plaintiff belatedly announced his intention to offer expert trial testimony from Dr. Mjønes.

---

[1] Such communications would have been protected from disclosure under Rule 26(b)(4)(C) only if Plaintiff had retained Dr. Mjønes as a testifying expert witness.

Plaintiff served an Amended Expert Designation in which he purported to designate Dr. Mjønes as a "retained expert" who "Plaintiff expects to provide expert testimony at trial." In the Amended Expert Designation, Plaintiff also represented that "Dr. Mjønes will not appear live at trial." Plaintiff's Amended Expert Designation was not accompanied by any explanation for the out-of-time disclosure or by a Rule 26 compliant expert report from Dr. Mjønes.

Plaintiff's belated service of the Amended Expert Designation does not cure his failure to comply with the Court's deadline. Plaintiff did not seek leave to serve the Amended Expert Designation, which is not otherwise authorized by any order of this Court. And "[t]he purpose of supplementary disclosures [under Rule 26(e) is just that—to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998).

Rule 37(c)(1) provides that the remedy for Plaintiff's violation of his Rule 26 expert disclosure obligations is that he "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Plaintiff's failure was neither. There can be no justification for Plaintiff's failure to disclose his intention to call Dr. Mjønes as a testifying expert by this Court's deadline for doing so. Nor can there be any justification for Plaintiff's waiting to identify Dr. Mjønes as a testifying expert until ***after*** her deposition despite Defendants' requests ***before*** then that Plaintiff clarify her status.

Moreover, Defendants would be prejudiced if Plaintiff is permitted to offer trial testimony from Dr. Mjønes under these circumstances. Even if Defendants could "redepose[] [Dr. Mjønes] . . . in response to the untimely designation, this would . . . result[] in additional delay and increase[] the expense of defending the lawsuit." *Geiserman v. MacDonald*, 893 F.3d 787, 792

(5th Cir. 1990). In any event, the Court should not tolerate such flagrant disregard of Rule 26 and the Court's scheduling orders. "Adherence to reasonable deadlines is critical to restoring integrity in court proceedings" and excusing Plaintiff's flouting of them "would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Id.*

Accordingly, the Court should strike Dr. Mjønes' expert report and preclude Plaintiff or her other experts, including Dr. Waldum, from "supply[ing] evidence on a motion, at a hearing, or at a trial" from Dr. Mjønes. *See* Fed. R. Civ. P. 37(c)(1). Alternatively, the Court should order Plaintiff to provide Defendants with an expert report for Dr. Mjønes that complies with Rule 26 and to produce Dr. Mjønes for a continuation of her deposition so Defendants can explore the bases for all her opinions—including those disclosed only on the eve of and during her deposition—with the benefit of a Rule 26 compliant expert report.

## I.  FACTUAL BACKGROUND

### A.  Plaintiff Did Not Disclose Dr. Mjønes as a Testifying Expert by the Court-Imposed Deadline.

In this complex pharmaceutical product liability action, Plaintiff alleges that his use of Defendants' prescription medicine, Nexium, caused his gastric cancer. The Court issued various Scheduling Orders setting (and extending) deadlines, including for the parties to disclose testifying expert witnesses and to submit reports from them. (Docs. 27, 52, 71, 77, 96.) Under the Court's scheduling orders, Plaintiff was required to disclose his experts and submit reports from them by December 3, 2021. The parties informally agreed to extend that deadline to January 14, 2022. *See* Exhibit 1, 12. 16. 22 Email String. As the operative Scheduling Order indicates, the time for "[d]isclosure of identities and resumes of experts and submission of expert reports" has "EXPIRED." (Doc. 96 at ¶ 2.c.)

On January 14, 2022, Plaintiff disclosed five (5) retained testifying experts and submitted their reports pursuant to Rule 26(a)(2)(A) and (B).  Plaintiff also disclosed multiple non-retained "treating physicians" who may give testimony under Rule 26(a)(2)(C).  *See* Exhibit 2, Plaintiff's Rule 26 Expert Disclosures at 3-5.  Plaintiff did not identify Dr. Mjønes as a witness who would give expert opinion testimony in any capacity at trial.  *See id.*  Instead, in forming his opinions, Dr. Waldum—one of the retained testifying experts who Plaintiff did disclose—relied on a pathology report signed by Dr. Mjønes and attached it to his own Rule 26 expert report.  *See* Exhibit 3, Rule 26 Expert Report of Helge Waldum, MD, PhD, Doctor D'Etat at 142, Appendix A.  Drs. Waldum and Mjønes are colleagues in Norway and have collaborated previously.

Dr. Mjønes' pathology report contains her observations and findings based upon her review of Plaintiff's pathology slides created in the ordinary course of his medical care and treatment by other medical providers, as well as additional pathology slides with staining that Dr. Mjønes conducted.  *See* Exhibit 4, Mjønes Dep. 80:17-81:23, 82:3-87:3, 219:7-12.  Based on her review of "the pathology materials and records pertaining [to] the biopsies and the partial gastrectomy performed on [Plaintiff], Dr. Mjønes concluded that she is "mostly in agreement with the diagnoses given by the Pathology Group of Louisiana."  Exhibit 3, Appendix A at 5.

Dr. Mjønes' pathology report, however, does not contain a statement of materials considered, a discussion of her qualifications, or the rate she charged for the work performed as would have been required under Rule 26(a)(2)(B) had she been disclosed as a retained testifying

expert.  *See* Exhibit 3, Pathology Report of Dr. Mjønes.[2]  Nor does Dr. Mjønes' pathology report

satisfy the Rule 26(a)(2)(B) requirement that it contains a complete statement of all her opinions

and the basis and reasons for them.  As even Plaintiff's counsel acknowledged, at her deposition,

Dr. Mjønes offered new opinions not disclosed in her pathology report.  *See* Exhibit 4, Mjønes

Dep. 174:3-9 ("[Y]ou [Defendants' counsel] and the witness have had several long conversations

about things not contained in her [pathology] report that are -- that she's observed in these slides.

I don't know if it's the new slides or old slides, but she's expressed other opinions here today

already.").

Upon receipt of Plaintiff's Rule 26 disclosure, Defendants sought to schedule Dr. Mjønes'

deposition and to determine the nature and scope of her involvement in the case.[3]  Thus, on January

21, 2022, Defendants requested that Plaintiff produce Dr. Mjønes for a deposition given

Dr. Waldum's stated reliance on information she provided.  *See* Exhibit 5 at 3-4, 1.21.22 email.

After Plaintiff failed to respond to Defendants' initial request, Defendants asked Plaintiff to

"confirm that [he] would produce Dr. Mjønes for a deposition," noting that it was "critical for

[Defendants] to understand [Plaintiff's] position given that [he] did not disclose Dr. Mjønes as an

---

[2] Rule 26(a)(2)(B) requires an expert report to include: "(1) 'a complete statement of all opinions the witness will express and the basis and reasons for them'; (2) 'the facts or data considered by the witness in forming them'; (3) 'any exhibits that will be used to summarize or support them'; (4) 'the witness's qualifications . . .'; (5) a list of cases in which the expert testified during the previous four years; and (6) a statement of the compensation received by the expert for his study and testimony."  *Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 36 (5th Cir. 2012) (quoting Fed. R. Civ. P. 26(a)(2)(B)).

[3] Defendants' request for Dr. Mjønes' deposition was justified even if she was serving as a non-testifying consulting expert.  *See* Fed. R. Civ. P. 26(b)(4)(D).  "Where a non-testifying expert's report has been used by a testifying expert as the 'basis' for the testifying expert's opinion, or where there is evidence of 'substantial collaborative work' between a testifying expert and a non-testifying expert, 'exceptional circumstances' may exist for purposes of Rule 26(b)(4)[(D)] to allow the deposition of the non-testifying expert/assistant."  *Estate of Manship v. United States*, No. 04-C-91-M2, 2008 WL 11351590, at*4 n.11 (E.D. La. Mar. 10, 2008).  Dr. Mjønes' work in this case fits that description regardless of whether Plaintiff expects her to testify as an expert.

expert." *See* Exhibit 5 at 1, 1.28.22 Email from Defendants' counsel. After multiple communications between the parties, Plaintiff ultimately agreed to produce Dr. Mjønes for a deposition on March 21, 2022. *See* Exhibit 6, 2.17.22 Email from Plaintiff's counsel, 2.16.22 Email from Defendants' counsel, 2.10.22 Email from Defendants' counsel, 2.9.22 Email from Plaintiff's counsel; Exhibit 7, 2.4.22 Email from Plaintiff's counsel, 2.3.22 Email from Plaintiff's counsel, 2.3.22 Email from Defendants' counsel, 2.1.22 Email from Defendants' counsel, 1.31.22 Email from Plaintiff's counsel, 1.28.22 Email from Plaintiff's counsel, 1.28.22 Email from Defendants' counsel, 1.21.22 Email from Defendants' counsel.

During the numerous communications between the parties to schedule Dr. Mjønes' deposition, Plaintiff did not clarify her role or otherwise indicate that he expected her to provide expert testimony at trial. Thereafter, on February 28, 2022, Defendants timely disclosed their Rule 26 testifying experts and submitted their reports, including for Defendants' expert pathologist, Dr. Lysandra Voltaggio.

### B. At Dr. Mjønes' Deposition, Plaintiff Treated Her as a Testifying Expert Despite Failing to Disclose Her as One.

On March 2, 2022, the parties participated in a meet and confer discovery conference to discuss several issues and specifically asked about Dr. Mjønes' role. After that meeting, Defendants' counsel wrote to Plaintiff's counsel memorializing their understanding from the parties' discussion: "At this point, it sounds like you do not consider Dr. Mjønes to be serving as an 'official' expert." *See* Exhibit 8 at 1, 3.2.22 Email. Plaintiff's counsel did not respond.

Consistent with their understanding, Defendants prepared for her deposition as if Dr. Mjønes would not be a testifying expert at trial. To that end, on March 10, 2022, Defendants served a Deposition Notice for Dr. Mjønes with a request that she produce certain documents before the deposition. *See* Exhibit 9, Dr. Mjønes' Deposition Notice. Because Plaintiff had not

disclosed Dr. Mjønes as a testifying expert, which would have shielded her communications with counsel from disclosure under Rule 26(b)(4)(C), Defendants requested that Dr. Mjønes produce all drafts of her report and communications regarding the litigation, including with counsel.

On March 20, 2022—the night before the deposition—Plaintiff objected to producing communications with Dr. Mjønes and counsel, stating *for the first time* that Dr. Mjønes "is a retained expert in this litigation" and thus such communications were protected from disclosure under Rule 26(b)(4)(C).[4]  Exhibit 10, 3.20.22 Email from Plaintiff's counsel.  The next day at Dr. Mjønes' deposition, Plaintiff's counsel stated on the record that they were "representing Dr. Mjønes here today as a consulting expert in this case, and she may not understand the technicalities of that relationship."  Exhibit 4, Mjønes Dep. at 21:21–25; *see also id.* at 26:18–20 ("As Dr. Mjønes is a consulting expert, we would not be providing draft reports"); *id.* at 31:1–4 ("[C]ommunications between Dr. Mjønes and other consulting witnesses and counsel for the plaintiff are privileged, as well as any draft reports.").

Dr. Mjønes contradicted that characterization.  She testified that she had not been asked to be an expert witness and that she had not been asked to testify at trial in the United States:

> Q.     Have you been asked to be an expert witness in this case?
>
> A.     No.
> . . .
>
> Q.     Okay.  All right.  Have you been asked to testify at the trial in the United States?
>
> A.     Not directly, no.
>
> Q.     When you say "not directly," that's always going to prompt me to ask you, what do you mean by that?

---

[4] Defendants also sought Dr. Mjønes' communications with Dr. Waldum.  Such documents are not protected from disclosure under Rule 26 and Plaintiff did not object to their production.

A.    Well, I have been told that it would be a court case, not -- I'm being told that afterwards.  But I've been under the impression that I wouldn't have to be deposed.  So I didn't think it would be relevant for me.

Q.    Has anyone told you that you will not have to testify at trial?

A.    Well, I kind of got that impression, that I wouldn't have to.

Exhibit 4, Mjønes Dep. at 187:12–188:17.

According to Dr. Mjønes, Dr. Waldum—not Plaintiff's counsel—directed her to prepare the pathology report and was the primary point of contact for her.  *Id.* at 183:13–22.  Indeed, she only communicated in writing with Plaintiff's counsel for the first time a few weeks before her deposition and only communicated orally with Plaintiff's counsel for the first time in the week before her deposition.  *Id.* at 184:22–185:12.  In other words, Dr. Mjønes had not communicated with Plaintiff's counsel (let alone been retained as a testifying expert) before the deadline for Plaintiff to disclose his experts and before Dr. Mjønes prepared the pathology report that is attached to Dr. Waldum's expert report.[5]

### C. Dr. Mjønes Offered Expert Opinions Outside the Scope of Her Pathology Report at Her Deposition.

After Defendants' examination of Dr. Mjønes, Plaintiff conducted an apparent trial preservation direct examination of Dr. Mjønes over Defendants' objection.  Among other things, Plaintiff (through mostly leading questions) examined Dr. Mjønes about her qualifications, the anatomy of the gastrointestinal tract, and opinions that she testified she held "to a reasonable

---

[5] At his deposition, Dr. Waldum confirmed that he asked Dr. Mjønes to prepare her pathology report because he is not a pathologist, was the primary person communicating with Dr. Mjønes about her findings, and instructed her on how to bill for her time.  Exhibit 11, Waldum Dep. at 40:17–20, 42:17–24, 50:3–12, 57:13–58:23, 103:11–14.  He also testified that Dr. Mjønes did not assist him with his report but prepared a separate pathology report and that he deferred to Dr. Mjønes regarding the pathology and did not independently peer review her findings.  *Id.* at 65:14–19, 103:11–22, 253:5–253:11, 270:17–20, 282:9–14.

degree of medical and scientific certainty" that were not disclosed in her pathology report. Exhibit 4, Mjønes Dep. at 327:14–362:10. Among others, Dr. Mjønes offered the following opinions outside the scope of her pathology report:

- Plaintiff's cancer was located in the corpus or fundus. *Id.* at 354:23–355:12.

- Plaintiff did not have Barrett's esophagus. *Id.* at 360:3–12.

- Plaintiff did not have esophageal cancer. *Id.* at 346:14–16.

In addition, Plaintiff produced two new versions of Dr. Mjønes' pathology report—one on the eve of her deposition and one on the day of her deposition—that contained notes written in Norwegian, which disclosed new opinions and information not disclosed in her pathology report.[6] Both Dr. Mjønes and Plaintiff's counsel confirmed that the newly produced versions of Dr. Mjønes' report reflected new observations based on her review of Dr. Voltaggio's expert report conducted contemporaneously with her re-review of Plaintiff's pathology. *See* Exhibit 4, Mjønes Dep. at 20:1-17, 80:17-81:23, 82:3-87:3, 174:1–11; 219:7-12.[7] Given the timing of the production, Defendants had to use internet sources to translate the Norwegian information during the deposition and were unable to adequately question Dr. Mjønes about the two newly produced versions of the pathology report.

During her deposition, Dr. Mjønes also identified bases for her opinions regarding the location of Plaintiff's cancer that were not disclosed in her pathology report. For example, Dr. Mjønes cited a pathology textbook as support for one of her opinions. *Id.* at 105:10–106:4, 324:3–

---

[6] These notes written in Norwegian were not apparent to Defendants until the day of the deposition because they were produced electronically with "sticky notes" that were hidden from plain view.

[7] As a result of all of this newly provided information, including newly disclosed expert opinions, as well as the directions by counsel not to answer questions seeking allegedly privileged communications, Defendants reserved their rights to continue Dr. Mjønes' deposition. *Id.* at 326:14-22.

325:10.  Defendants were unable to adequately question Dr. Mjønes about that assertion because Dr. Mjønes' pathology report did not disclose that textbook as a basis for her opinion.

Given all this, before Dr. Mjønes' deposition concluded, Defendants' counsel stated that Defendants would "challenge the fact that [Dr. Mjønes is a non-disclosed expert" because "you've basically turned her into a testifying expert."  *Id.* at 341:3–7.  After Plaintiff's counsel noted Defendants' objection, Defendants' counsel reiterated that Dr. Mjønes is "now a testifying expert" and that Defendants would "move to strike her."  *Id.* at 341:13–16.

### D.  Plaintiff Purported to Disclose Dr. Mjønes as a Testifying Expert in the Amended Expert Designation.

On April 12, 2022—three months after the deadline for disclosing his expert witnesses and three weeks after Dr. Mjønes' deposition, and without any further communication to Defendants on this topic—Plaintiff served the Amended Expert Designation.  In it, Plaintiff identified the same five retained testifying experts he disclosed in his original Rule 26(a)(2) disclosure and purported to designate Dr. Mjønes as an additional "witness[] [who] Plaintiff expects to provide expert testimony at trial."  *See* Exhibit 12 at 2, 4, Plaintiff's Amended Expert Designation of Expert Witnesses (Redlined as provided by Plaintiff's counsel).  Plaintiff did not explain why Dr. Mjønes was not identified as a testifying expert in his original expert disclosures or in response to Defendants' inquiries about her status.  Plaintiff also did not submit a Rule 26 compliant expert report for Dr. Mjønes with his Amended Expert Designation.  Instead, the Amended Expert Designation states that "Dr. Mjønes' anticipated trial testimony and opinions are set forth in and will be limited to her deposition testimony provided on March 21, 2022, as well as her opinions set forth in her report attached to Dr. Waldum's expert report at Appendix A."  *Id.* at 3–4.  In addition, the Amended Expert Designation states that "Dr. Mjønes will not appear live at trial."

*Id.* at 4.  Presumably, Plaintiff intends to offer Dr. Mjønes' deposition testimony in lieu of live testimony at trial.

## II.  LAW AND ARGUMENT

**The Court Should Strike Dr. Mjønes' Report and Testimony Because**
**Plaintiff Failed to Timely Identify Her as a Testifying Expert as Required by Rule 26.**

The Court should strike Dr. Mjønes' pathology report, which is attached to Dr. Waldum's expert report and prohibit Plaintiff and his other experts from offering Dr. Mjones' opinions for any purpose because she is a Rule 26 testifying expert whom Plaintiff did not timely disclose and for whom Plaintiff did not provide the required Rule 26 expert report.

### A.     Plaintiff Failed to Timely Disclose Dr. Mjønes as a Testifying Expert.

"A party must make [expert] disclosures at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  The Court's scheduling orders and the parties' agreement required Plaintiff to make his expert disclosures by January 14, 2022.  Plaintiff did not disclose that he expected Dr. Mjønes to provide expert trial testimony by that deadline even though Dr. Waldum purported to rely on Dr. Mjønes' pathology report and attached it to his own expert report.  Effectively conceding that Dr. Mjønes is a witness who Plaintiff  "may use at trial to present evidence under Federal Rule of Evidence 702" and, who he therefore was required to disclose by the Court-imposed deadline, Plaintiff purported to do so three months later and only after Dr. Mjønes was deposed in his Amended Expert Designation.  But that is not sufficient to comply with the Court's scheduling orders or Plaintiff's Rule 26 obligations.

Rule 26(e) requires a party to supplement expert disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect," but that does not cure Plaintiff's violation here.  As the Fifth Circuit has held, "[t]he purpose of supplementary disclosures is just that—to supplement.  Such disclosures are not intended to

13

provide an extension of the expert designation and report production deadline." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998). There the Court affirmed the denial of a party's motion for leave to designate an expert where the expert's report was not submitted until three months beyond the court's deadline. *Id.*; *see also Harmon v. Ga. Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 36–37 (5th Cir. 2012) (same); *Dandy v. Ethicon Women's Health & Urology*, No. 20-431 (FLW)(DEA), 2022 WL 130917, at *3 (D.N.J. Jan. 12, 2022) ("'Courts have repeatedly emphasized the narrow scope of supplementation permitted by Rule 26(e); such supplementation is proper only for the limited purpose of correcting inaccuracies or adding information that was not available at the time of the initial report. Rule 26(e) is not an avenue to correct failures of omission because the expert did an inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions.'" (citation omitted)).

Plaintiff has not even sought leave for his untimely designation of Dr. Mjønes' expert testimony. In any event, as in the foregoing authorities, there would be no basis for the Court to grant leave even if Plaintiff had sought it. Indeed, the scheduling order expressly provides that "a motion to extend any deadline set by this Order must be filed before its expiration." (Doc. 96 at 2.) As the scheduling order plainly indicates, Plaintiff's deadline for expert disclosures already has "EXPIRED." (*Id.* at ¶ 2.c.) Thus, any motion to extend that deadline would be untimely. In addition, Plaintiff's Amended Expert Designation would not comply with Rule 26 even if it had been timely submitted because Plaintiff still has not submitted an expert report that satisfies all Rule 26 requirements. *See Metro Ford Truck*, 145 F.3d at 324 (rejecting party's contention "that the mere one week delay in designating this expert was nominal and resulted in no prejudice" because the party "fails . . . to note the lack of an accompanying written report, as required by the

scheduling order and Rule 26(a)(2)(B), which results, necessarily, in the conclusion that the expert

designation deadline was not merely one week late as it contends").

### B.    The Court Should Strike Dr. Mjønes' Pathology Report and Preclude Plaintiff or His Experts from Using Dr. Mjønes' Report or Testimony for any Purpose.

Sanctions available for Plaintiff's "fail[ure] to obey a scheduling . . . order" are found in

Rule 37 and include "striking pleadings in whole or in part."  Fed. R. Civ. P. 16(f)(1)(C),

37(b)(2)(A)(iii).  Rule 37(c)(1) provides the remedy for Plaintiff's failure to comply with his Rule

26 expert disclosure obligations. That Rule provides where, as here, "a party fails to provide

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see also Honey-Love*

*v. United States*, 664 F. App'x 358, 362 (5th Cir. 2016) ("under Rule 37(c), the presumptive

sanction for failing to disclose a testifying expert or supply a required expert report or summary

disclosures is to exclude or limit the expert's testimony unless the failure was substantially justified

or harmless").  Reviewing a district court's exclusion of expert evidence for violation of court-

ordered deadlines, the Fifth Circuit has held that the Court "should exercise [its] discretion to

exclude evidence that was not properly designated by considering the following four factors: (1)

the explanation for the failure to identify the witness; (2) the importance of the testimony; (3)

potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such

prejudice."  *Geiserman*, 893 F.2d at 791.  Each of those factors weighs in favor of prohibiting

Plaintiff or his experts from using Dr. Mjønes' pathology report and testimony for any pretrial or

trial purpose.

1.   **Plaintiff's Untimely Disclosure of Dr. Mjønes as a Testifying Expert is Not Justified.**

When Plaintiff filed his initial expert disclosures, he plainly knew that Dr. Waldum relied on Dr. Mjønes' opinions because Dr. Waldum attached Dr. Mjønes' pathology report to his own expert report.  If Plaintiff intended for Dr. Mjønes' to offer expert testimony at trial, he could have said so then and submitted an expert report as this Court's scheduling order and Rule 26 required. Nothing has happened since then that justifies Plaintiff's three-month delay in identifying Dr. Mjønes as a testifying expert.  Plaintiff's delay is particularly unjustified given his failure to respond to Defendants' repeated inquiries about Dr. Mjønes' role.  *See Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (affirming denial of motion to supplement expert report made after expert was deposed and after adversary's deadline to submit its expert disclosures because the movant "offered no justification for its delay in attempting to cure [the expert's] deposition and report"); *Deakle v. Westbank Fishing, LLC*, No. 20-1554, 2021 WL 6496818, at *3 (E.D. La. Sep. 29, 2021) (excluding supplemental expert report where "plaintiff has not adequately explained her failure to timely submit this version of the report, much less the delay of nearly two months following the deadline"); *Wagner v. Hurst*, No. 16-cv-1446, 2019 WL 2213915, at *4 (W.D. La. May 21, 2019) ("Absent a reasonable explanation for missing the expert report deadline by more than three months, allowing plaintiff to submit the untimely expert report now in response to the motion for summary judgment would undermine the integrity and purpose of the pretrial order").

2.   **Dr. Mjønes' Proposed Testimony is not Important to Plaintiff's Case.**

After her review of Plaintiff's "pathology materials and records," Dr. Mjønes concluded that she is "mostly in agreement with the diagnoses given by the Pathology Group of Louisiana." Exhibit 3, Waldum Report, Ex. A at 5.  The Pathology Group of Louisiana's diagnoses are in the

record.  Dr. Mjønes' agreement adds little.  *See Harmon*, 476 F. App'x at 37 (affirming exclusion of untimely submitted expert report where "there were medical records addressing this issue"); *Deakle*, 2021 WL 6496818, at *4 (noting that "the testimony in [the expert's] revision is only marginally important").

Moreover, to the extent that Dr. Mjønes' testimony is important to Plaintiff's case, that just "underscores the need for [Plaintiff] to have timely designated his expert witness so that [Defendants] could prepare for trial."  *Geiserman*, 893 F.2d at 792; *see also Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) ("[T]he importance of the testimony underscores how critical it was for [the party] to have timely designated [his expert witness]").  Thus, even if "the importance of Dr. [Mjønes'] testimony weighs against exclusion of that testimony, the importance of proposed testimony cannot 'singularly override the enforcement of local rules and scheduling orders.'"  *Hamburger*, 361 F.3d at 883 (affirming exclusion of late submitted expert evidence despite its importance (quoting *Geiserman*, 893 F.2d at 792)); *see also Wagner*, 2019 WL 2213915, at *4 (same; striking late submitted expert report despite its importance to plaintiff's case.  Indeed, a contrary rule would create a perverse disincentive for parties to flout deadlines for compliance with their Rule 26 expert disclosure obligations for their most important expert witnesses.

### 3.    Defendants Would be Prejudiced If Plaintiff Were Permitted to Use Dr. Mjønes' Expert Testimony.

"When scheduling orders are violated, an opposing party is often prejudiced by the ensuing delay and resultant expense."  *Trilogy Comms., Inc. v. Times Fiber Comms., Inc.*, 109 F.3d 739, 744-45 (Fed. Cir. 1997) (applying Fifth Circuit law to affirm exclusion of expert testimony because party made expert disclosures "after the due date for expert's reports had passed"); *see also Gaffney v. JPMorgan Chase Bank, N.A.*, No. CV 16-802-SDD-RLB, 2018 WL 9362558, at *2

(M.D. La. Apr. 18, 2018) (Dick, J.) ("The Court is not persuaded that re-opening discovery, requiring additional depositions and possibly additional witnesses by the Defendant, precipitating the need for additional dispositive motions, does not prejudice the Defendant."). So too here.

It was not until the eve of Dr. Mjønes' deposition—more than two months after the deadline for his expert disclosures—that Plaintiff first characterized her as a "retained expert." Plaintiff did not disclose that before then despite Defendants' inquiries about Dr. Mjønes' status from the time Plaintiff served his Rule 26 expert disclosures and Plaintiff's knowledge of Defendants' understanding that Plaintiff did not intend to call Dr. Mjønes as an expert witness at trial. And it was not for another three weeks—three months after the deadline for his expert disclosures—that Plaintiff purported to disclose Dr. Mjønes as a retained testifying expert in his Amended Expert Designation.

Moreover, Plaintiff did not submit an expert report for Dr. Mjønes that complied with Rule 26 (and still has not done so). Consequently, when Defendants prepared to depose Dr. Mjønes they were laboring under the misimpression that Plaintiff did not intend for Dr. Mjønes to provide expert testimony at trial and without the benefit of all her purported expert opinions some of which were not disclosed until the eve of her deposition through notations in Norwegian on copies of her pathology report or at her deposition during Plaintiff's trial preservation direct examination. *See Johnson v. Townsend, Inc.*, No. CV 14-102-SDD-SCR, 2015 WL 5320948, at *3 (M.D. La. Sept. 11, 2015) (Dick, J.) ("In short, the Defendants were prejudiced in their ability to marshal evidence to contradict opinions in the 'updated' HAAG report.'").

Notably, that Defendants deposed Dr. Mjønes does not compel a different result. Rule 26 provides that where, as here, "Rule 26(a)(2)(B) requires a report from the expert, the deposition [of the expert] may be conducted only ***after*** the report is provided." Fed. R. Civ. P. 26(b)(4)(A).

That is because "[t]he purpose of requiring disclosure of expert reports is to notify opposing parties of the scope and content of the expert's proposed testimony." *Pride Centric Resources, Inc. v. LaPorte*, No. 19-10163, 2021 WL 4476796, at *2 (E.D. La. Sep. 30, 2021).  And the expert report gives the opposing party a foundation to further explore the expert testimony and bases for it. Defendants were denied that opportunity because Plaintiff did not (and has not) provided an expert report for Dr. Mjønes that complies with Rule 26.

In *Shepherd v. GeoVera Specialty Ins. Servs., Inc.*, No. 14-862, 2015 WL 1040452 (E.D. La. Mar. 10, 2015), the court excluded expert testimony from a witness, like Dr. Mjønes, who failed to submit an expert report that complied with Rule 26(a)(2)(B) even though the witness explained his opinions at a deposition.   The court explained: "An expert cannot remedy deficiencies in his report by clearly articulating his opinions in a deposition.  Indeed, if the Court were to permit an expert who submits a deficient report to cure the deficiencies in his deposition, the disclosure requirements of Rule 26 would be rendered meaningless." *Id.* at *2.  Here, where Plaintiff did not even disclose that he expected Dr. Mjønes to offer expert testimony at trial as required by Rule 26, the argument for precluding him from offering Dr. Mjønes' expert evidence is even more compelling.

The prejudice in this case is exacerbated by Plaintiff's apparent plan to offer Dr. Mjønes' deposition in lieu of live testimony at trial.  That is particularly true where, as here, Defendants could not adequately prepare to depose Dr. Mjønes because Plaintiff did not provide an expert report that disclosed all her opinions and all the bases for them before her deposition.

In any event, expert witnesses chosen and paid by a party are not subject to the rule that they are "unavailable," justifying use of their depositions in lieu of live testimony merely because they are more than 100 miles from the place of trial.  *See Carter-Wallace, Inc. v. Otte*, 474 F.2d

529, 536 (2d Cir. 1972). Unlike fact witnesses, "a party ordinarily has the opportunity to choose the expert witness whose testimony he desires and invariably arranges for his presence privately, by mutual agreement, and for a fee." *Id.* Moreover, an "expert witness generally has no knowledge of the *facts* of the case" and "there is no need to use his previous testimony to prevent the loss of evidence, because there will usually be other experts available to give similar testimony orally." *Id.*; *see also La. Real Estate Appraisers Bd. v. United States Fed. Trade Comm'n*, No. 19-214-BAJ-RLB, 2020 WL 1817297, at *3 (M.D. La. Apr. 9, 2020) (denying Rule 27(b) motion to take deposition to perpetuate the testimony of an expert witness because "the unavailability of a particular expert witness does not raise the same issues as the unavailability of a fact witness"); *Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, No. Civ.A.97-529 MMS, 2000 WL 135129, at *4 (D. Del. Jan. 13, 2000) ("Given the preference of this Court and the Rules for live testimony, the apparent absence of any effort by [the proponent] to secure [its expert's] attendance at trial, and the importance for the jury to see and observe the expert's testimony and cross-examination on the issues to determine the expert's credibility and reliability, the Court holds that [the expert's] deposition testimony will not be admitted under Rule 32(a)(3)(B)."); *Thompson by Thompson v. Merrell Dow Pharms., Inc.*, 2 551 A.2d 177, 189 (N.J. Super. Ct. App. Div. 1988) ("We agree with the rationale of Judge Friendly in *Carter-Wallace, Inc. v. Otte*, that expert witnesses are not unavailable simply because they are not subject to service of process.").[8]

Finally, even if the Court were to excuse Plaintiff's violation of the Court's scheduling orders and his Rule 26 expert disclosure obligations and permit Defendants to "redepose[]" Dr. Mjønes, that would not obviate the prejudice to Defendants. *Geiserman*, 893 F.2d at 792.

---

[8] If notwithstanding Plaintiff's violation of the Court's scheduling order and Rule 26, the Court permits Dr. Mjønes to testify at trial, Defendants reserve their right to challenge Plaintiff's apparent plan to offer Dr. Mjønes deposition in lieu of live testimony at trial.

Even that circumstance "would . . . result[] in additional delay and increase[] the expense of defending the lawsuit." *Id.*

### 4.     A Continuance Would Delay the Scheduled November Trial.

"Because of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance." *Hamburger*, 361 F.3d at 884. A court is not obligated to order a continuance to accommodate a party that fails to meet court-ordered deadlines because "[o]therwise, the failure to satisfy the rules would never result in exclusion, but only in a continuance." *Id.*, *see also Wagner*, 2019 WL 2213915, at *4 ("continuances for discovery misconduct allow parties to disregard Rule 26 and this Court's scheduling order with impunity."). Delays caused by "the flouting of discovery deadlines . . . increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution." *Geiserman*, 893 F.2d at 792. Consequently, "[a]dherence to reasonable deadlines is critical to restoring integrity in court proceedings." *Id.*

The Court already has extended deadlines in this case multiple times. There is  now schedule for completion of pretrial activities leading to trial of this case beginning in November 2022. The Court should not excuse Plaintiff's disregard of the Court's deadline for expert disclosures by granting a continuance that Plaintiff has not requested, that would itself be untimely under the scheduling order, and might delay the pretrial and trial schedule.

* * *

In sum, the Court should exercise its discretion under Rule 37 to strike Dr. Mjønes' pathology report and preclude Plaintiff or his experts from using Dr. Mjønes' pathology report or her testimony for any purpose. Alternatively, if the Court permits Dr. Mjønes to testify, at a

minimum, the Court should require Plaintiff to submit a Rule 26 compliant expert report and to produce her for a continued deposition to limit the prejudice to Defendants described above.

### III.  CONCLUSION

For the foregoing reasons, the Court should strike Dr. Mjønes' pathology report and preclude Plaintiff or his experts from relying on Dr. Mjønes' opinions on a motion, at a hearing or at trial or, alternatively, require Plaintiff to submit an expert report prepared by Dr. Mjønes that complies with Rule 26(a)(2)(B) and to produce Dr. Mjønes for a continuation of her deposition.

Respectfully submitted,

**ADAMS AND REESE LLP**

*s/ Diana Cole Surprenant*
E. PAIGE SENSENBRENNER (#18429) – T.A.
DIANA COLE SURPRENANT  (#33399)
701 Poydras, Suite 4500
New Orleans, Louisiana 70139
paige.sensenbrenner@arlaw.com
diana.surprenant@arlaw.com
(504) 581-3234 (telephone)
(504) 553-9489 (facsimile)

*Attorneys for Defendants,*
*AstraZeneca Pharmaceuticals LP, AstraZeneca*
*LP, and Merck Sharp & Dohme Corporation*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 27, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*s/ Diana Cole Surprenant*
DIANA COLE SURPRENANT