## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STANLEY P. BAUDIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 18-1063 |
| | ) | |
| ASTRAZENECA | ) | JUDGE SHELLY DICK |
| PHARMACEUTICALS LP; | ) | |
| ASTRAZENECA LP; and MERCK | ) | MAGISTRATE JUDGE |
| SHARP & DOHME CORPORATION, | ) | ERIN WILDER-DOOMES |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPOSITION TO DEFENDANTS' MOTION TO STRIKE**

Plaintiff Stanley Baudin in the above-referenced matter by and through undersigned counsel hereby opposes Defendants' Motion to Strike Reports and Testimony of Dr. Patricia Mjønes, and, in the alternative, to Re-depose Dr. Patricia Mjønes. Dr. Patricia Mjønes is a pathologist in Trondheim, Norway. Plaintiff's expert, Dr. Helge Waldum, gastroenterologist who, like many other physicians and colleagues here in the United States and in Norway, sends pathology samples to be examined and reviewed by pathologists. Dr. Waldum, in the ordinary course of his practice, requested that his colleague, Dr. Mjønes, review and report on the tissue slides of Mr. Baudin and relied on a report of those findings, attaching the report as an appendix to his timely filed expert report. The pathology report written by Dr. Paticia Mjønes was fully disclosed and attached as an exhibit to Dr. Waldum's expert report provided to the defendants. Dr. Waldum is entitled to rely upon otherwise inadmissible facts and data if 'experts in the particular field would reasonably rely on such evidence.' <u>Sandifer v. Hoyt Archery, Inc.</u>, 907 F.3d 802, 808 (5th Cir. 2018). Defendants' motion rests on the false premise that Plaintiff "disclosed" Patricia

1

Mjønes as a retained testifying witness three months after the disclosure deadline in this case. Nothing could be further from the truth.

Rule 26 (2)(A) of the Federal Rules of Civil Procedure states, in part, that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence." Similarly, Rule 26 (2)(C) requires disclosure of witnesses who are "expected to present evidence" at trial even though they are not required to give a report pursuant to Rule 26(2)(A). As more fully set forth below, Plaintiff did not intend to call Dr. Mjønes as a witness in this case, a fact which she confirmed in her deposition conducted at the request and insistence of the Defendants on March 21, 2022. Although Plaintiff was not required to disclose Dr. Mjønes, a consulting expert, in his Rule 26 disclosures, Defendants insisted on taking her deposition. At her deposition which lasted nearly seven hours, Defendants asked Dr. Mjønes her opinion on a wide array of subjects including her background, qualifications, prior experience testifying, hourly rate and many issues within the scope of the six page report she had prepared for Dr. Waldum. Pursuant to F.R.C.P. 30, Plaintiff's counsel appropriately conducted cross-examination of Dr. Mjønes after Defendants passed the witness. Plaintiff should be permitted to utilize the testimony of Dr. Mjønes consistent with the Rules of Civil Procedure and the Federal Rules of Evidence. As is more fully set forth below, the Court should deny Defendants' Motion.

I.    THE REPORT OF DR. PATRICIA MJONES, A NON-TESTIFYING EXPERT CONSULTANT, WAS TIMELY

On January 14, 2022, Plaintiff produced the timely Rule 26(a)(2) report of Helge Waldum, MD pursuant to the Court's scheduling order in this case. (Dkt # 77). Attached to Dr. Waldum's report at Appendix A is a report of Dr. Mjønes, a physician specializing in gastrointestinal pathology in the Department of Pathology at St. Olavs Hospital, Trondheim, Norway, prepared at the request of Dr. Waldum. (See, Exhibit A). As requested by her colleague Dr. Waldum, Dr. Mjønes reviewed 58 slides of tissue samples obtained from the Plaintiff during two medical

procedures performed to diagnose and treat his gastric adenocarcinoma.  (Exhibit A at 1).  Dr.

Mjønes detailed her observations in her six page report to Dr. Waldum.

Under the Rules of Civil Procedure concerning expert testimony, Dr. Waldum, like other

experts, is entitled to rely otherwise inadmissible facts and data if 'experts in the particular field

would reasonably rely on such evidence.' Sandifer v. Hoyt Archery, Inc., 907 F.3d 802, 808 (5th

Cir. 2018).  Dr. Waldum is a gastroenterologist.  As he testified, he relies on Dr. Mjønes for

pathological expertise in his normal practice in this field. (Exhibit B - Excerpt from Deposition of

Helge Waldum, MD p. 283 – 284). It was in this capacity as a consulting pathologist that Dr.

Waldum contacted Dr. Mjønes and sought her review of Plaintiff's available pathology.

Q. I know you've told us that Dr. Waldum asked you to do this pathologic
review. Did anyone else direct your work?
A. No.

(Exhibit C – Deposition of Patricia Mjønes, MD at p. 181 ln. 7- 12).

Similarly, at the request of Dr. Waldum, Dr. Mjønes did additional staining on the tissue

she received in this case to look for neuroendocrine cells just as she would have in her daily

practice "if a clinician asked me if there's presence of --- if you have hyperplasia of

neuroendocrine cells."  (Id. p. 197 ln. 11 - 24).

With regard to her involvement in this case, Dr. Mjønes made clear to Dr. Waldum,

consistent with her understanding that she would not be acting as an expert witness in the case, and

that she "has no intention on answering anything apart from what has to do with my report. Like

I'm preparing only for the report itself…I'm telling him in the email is that I'm planning to answer

what has to do with the report, with the pathology report, but, you know, saying that I don't have

time to prepare for anything else." (Id.  p. 70 ln. 5 – 9; 18-23).

II.     THE RULES OF CIVIL PROCEDURE ALLOW THE USE OF DR. MJØNES
DEPOSITION TESTIMONY

It cannot be reasonably disputed that neither the Plaintiff nor Dr. Mjønes had any intention of offering her testimony when he disclosed his experts in January, 2022, but her Report, which is relied upon by Dr. Waldum, was timely disclosed and produced with Dr. Waldum's report.  Dr. Mjønes herself explicitly stated that she had not been asked to serve as an expert witness in the case.

> Q. Have you been asked to be an expert witness in this case?
>
> A. No.
> ***
> Q.  …Have you told anyone that you do not want to be an expert witness?
>
> A. Well, I've said that I'm not --I wouldn't like to be in a situation where I have to -- having a deposition like you're having now.

(Id. p. 187 ln 12 – 14 and ln. 20- 25).

Neither was Dr. Mjønes asked to testify at the trial of this matter in the United States.  (Id. 188 ln. 1 -17).  Dr. Mjønes explained that she never acted as a litigation expert before, nor had she done any private pathology consulting.  (Id. p. 13 ln. 14- 17; p. 67 ln. 21-25).  Accordingly, she explained that she had never been deposed before. (Id. p. 10 ln. 17-19). In fact, it was not until after the Defendants requested her deposition that she had even spoken substantively about this case with Plaintiff's counsel.  (Id. p. 34 ln. 3 – p. 35 ln. 12). Dr. Mjønes reviewed and prepared a report concerning her observations requested by Dr. Waldum as she would when asked to consult by any physician, nothing more.  (Id. p. 39 ln. 23 – p. 35 ln. 9).  Dr. Mjønes reiterated at her deposition that she had did not think she would be testifying in this matter, so the question of going to trial in the United States was "not relevant to me." (Id. p. 188 ln. 1 -13).  To that end, Plaintiff noted this fact in his Amended Expert Disclosure which limits the scope of Dr. Mjønes testimony in this case to those areas identified in her report and elucidated by Defendants in their seven hour examination of Dr. Mjones.  If nothing more, Dr. Mjønes should be treated like any other physician as a fact witness.

Rule 32 of the Federal Rules of Civil Procedure governs the use of depositions in court proceedings. As a threshold matter, the rule states that "all or part of a deposition may be used against a party" if the party was "present or represented;" if the testimony would have been admissible under the Rules of Evidence had the witness appeared; and if the witness is unavailable. F.R.C.P. 32. Pursuant to F.R.C.P. 32 (a)(4)(B), Dr. Mjønes is unavailable. Dr. Mjønes resides in Norway and none of the parties can compel her to travel to the United States. Plaintiff should be permitted to use the transcript and video her testimony.

### III.    DEFENDANTS INSISTED ON OBTAINING TESTIMONY FROM PATRICIA MJØNES, MD

Following service of Dr. Waldum's report, Defendants sought a meet and confer concerning the Dr. Mjønes's report. In that March 2, 2022 telephonic meeting, Defendants accused Plaintiff of improperly disclosing Dr. Mjønes, on January 14, 2022. During that meet and confer, Plaintiff's counsel informed Defendants' counsel that they had no intention of calling Dr. Mjønes to testify at trial. Despite this assurance, Defendants demanded that Plaintiff make Dr. Mjønes available for deposition. Defense counsel further sought Plaintiff's agreement not to offer any testimony from Dr. Mjønes obtained during her then, as yet, unscheduled deposition. Plaintiff refused Defendant's request to discard the Rules of Civil Procedure, but agreed to ask Dr. Mjønes to voluntarily appear for deposition. Dr. Mjønes agreed and did voluntarily appear for deposition on March 22, 2022. In advance of her deposition and to refresh her recollection about her earlier observations months ago, Dr. Mjønes received and reviewed Plaintiff's pathology slides. (Id. p. 19 ln. 6 – 9). Additionally, Dr. Mjønes reviewed the expert report of Defendants' pathologist Lysandra Voltaggio who had examined and critiqued Dr. Mjønes' s' observations. (Id. p. 20 ln. 1 - 4).

In the interest of fairness and to avoid unnecessary motion practice, Plaintiff requested

and received Dr. Mjønes' voluntary participation in the deposition requested and noticed by Defendants.  In response to the Notice of Deposition duces tecum, Plaintiff produced Dr. Mjønes' curriculum vitae, a number of emails, and the notes prepared by Dr. Mjønes while re-reviewing Baudin's pathology slides.  Defendants' should not be heard to cry 'foul' now that they have spent a full day examining Dr. Mjønes qualifications and opinions in this case.

IV.     DEFENDANTS EXAMINED DR. MJONES' CONCERNING HER FINDINGS AND OPINIONS STATED IN HER REPORT

a.   Dr. Mjønes, Report

On April 9, 2021, Dr. Mjønes, signed and delivered her report to Dr. Waldum entitled "Pathology Report on Biopsies Received from the Pathology Group of Louisiana." (Id. p. 142 ln. 6 -20).  In that report, Dr. Mjønes, catalogued the materials she received as 58 pathology slides and one tissue block "from normal background mucosa" and one tissue block from polypoid tissue from the proximal stomach."  (Exhibit A at 1). For the first four plus pages of the report, Dr. Mjønes, goes through her microscopic examination of the slides detailing the qualities, limitations and her findings related to the tissue samples.  On pages 5 and 6 of the Report, Dr. Mjønes, summarizes her findings.  Here she concurs with the diagnosis of Plaintiff's treating physicians that he had gastric type adenoma with high grade dysplasia, among other things.  In addition to her characterization of the tissue from various procedures and locations, Dr. Mjønes reports on "tissue immunostained with neuroendocrine markers (synaptophysin and chromogranin A) from normal background mucosa (PG-17-18840) there are changes consistent with simple hyperplasia and possible linear hyperplasia of neuroendocrine cells."  (Id. at 3).  Dr. Mjønes explained that this was specific staining that Dr. Waldum asked her to perform on the tissue "to look for signs of hyperplasia of neuroendocrine cells of the stomach," and the result of that test.  (Id.  at p. 41 ln. 16 -  p. 42 ln. 13). Dr. Waldum generally describes Dr. Mjønes' findings and refers to this specific staining testing performed by Dr. Mjønes on page 142 of his report.

      b.  <u>In preparation of her voluntary deposition, Dr. Mjønes, re-reviewed pathology materials as well as the report of Defense Expert Alexandra Voltaggio's observations of those available pathology</u>

Prior to the Defendants' deposition of Dr. Mjones, Dr. Mjønes requested and received the report of Defendants' pathology expert Lysandra Voltaggio and additional slides produced by Pathology Group of Louisiana that were not available at the time of her September Report but that were reviewed and relied upon by Dr. Voltaggio.  (Exhibit C at  p. 83 ln. 13 – p. 84 ln. 7).  In addition to these materials, Dr. Mjønes made extensive notes of her re-review of the original slides and her observations of the new slides which were produced by Plaintiff to Defendants on the day of her deposition.  Importantly, Dr. Mjønes created these notes during her re-review of the material which only took place two days before the deposition and added to them the day before the deposition. (Id. p. 81 ln. 7 – p. 82 ln. 21).  In addition to containing her observations of the material, these notes also considered and at times discussed agreement or differences with her own original findings and agreements and differences with her observations and Dr. Voltaggio. (Id.).

      c.  <u>Defendants Conducted A Broad And Far-reaching Examination Of Dr. Mjønes In The Hopes Of Bolstering The Opinions Of Dr. Voltaggio And Undermining The Opinions Of Dr. Waldum.</u>

Defendants sought to examine Dr. Mjønes on a number of areas in the hopes of undermining the opinions of Dr. Waldum.  By no means limited to just the following two subjects, Defendants painstakingly examined Dr. Mjønes, concerning 1) whether Plaintiff's tumor was located in the gastric cardia (Id. p. 105 ln. 5 – 7); and 2) whether Plaintiff had the pre-cancerous condition of Barrett's esophagus (Id. p. 107 ln. 14 – 19).  As is made clear below, Plaintiff's cross-examination of Dr. Mjønes was entirely within the scope of Dr. Mjønes' Report and Defendants' examination and, necessarily, provided the foundation and degree of certainty to which Dr. Mjones ascribed her findings.

1)     Defendants' examined Dr. Mjønes concerning her opinion that Plaintiff's tumor was in the "Proximal stomach, posterior wall."

Defendants' pathologist, Lysandra Voltaggio, claims that the Plaintiff's gastric adenocarcinoma arose in the gastric cardia.  (Exhibit D - Report of Lysandra Voltaggio at 17). Critically, many of Defendants experts rely on the location of Plaintiff's tumor in the gastric cardia as a foundational fact for their opinions. For example, Defendants' expert, Dr. Thomas Wang opined that "The patient was likely developing Barrett's esophagus, intestinal metaplasia above the GE junction. This type of severe GERD/BE in the setting of a large hiatal hernia is, as previously discussed, associated with an increased risk of GEJ and **gastric cardia adenocarcinoma**." (Exhibit E – Excerpt of Report of Thomas Wang, MD at 57 [emphasis added], see also Exhibit F – Excerpt of Report of Laurel Fisher, MD at 28).  In fact, another expert for the defense highlights the importance of the tumor's location stating "As mentioned previously, the risk factors, pathophysiology, and demographics of cancer of the gastric cardia differ from those of the more distal stomach. When applying the medical literature to Mr. Baudin's case, it is therefore important to assess whether any particular study focuses on gastric cardia cancer or, at least, differentiates between gastric cardia cancer and more distal gastric cancer." (Exhibit G – Excerpt of Report of Benjamin Musher, MD at 17). So, despite Defendants' assertion that Dr. Mjønes testimony is "unimportant" (Def. Br. At 16) the location of the tumor is critically important to their defense. This is made clear by their persistent attempts to challenge Dr. Mjønes on her diagnosis of this as gastric cancer instead of cardia gastric cancer.  In her Report, Dr. Mjønes located Mr. Baudin's tumor in the "proximal stomach, posterior wall," not in the Cardia.  (Exhibit A at 3).



Image 1: https://www.emedicinehealth.com/image-gallery/stomach_picture/images.htm
(white boxes inserted on top of original image)

As depicted above, the stomach is comprised of four general parts the Cardia, the Body (or Corpus), the Fundus and the Antrum.  In this case, there is no dispute that the Antrum is not a site of the Plaintiff's cancer.  There is also no dispute that the gastroesophageal junction, or the area where the esophagus joins the stomach, was not the location of the Plaintiff's cancer.  The Cardia is a part of the 'proximal' or top of stomach.  Dr. Mjønes explained that the proximal stomach includes the gastric cardia, in addition to part of the Body and Fundus.  Dr. Mjønes explained that "[t]he proximal stomach would be the area of the stomach closest to the esophagus. So the Cardia is part of the proximal stomach, but you also have this as a part of the proximal stomach [pointing out areas of the Body and Fundus]." (Exhibit C at  p.333 ln. 22 – p. 334 ln. 1).  Typically, the Cardia is very small measuring from 1 to 2 mm. (Id. p. 323 ln. 14 – p. 324 ln. 16, citing Odze, et al. Surgical Pathology of the GI Tract, Liver, Biliary Tract and Pancreas (4th ed.)).  The Cardia has characteristics that are distinct pathologically from the Corpus and the Fundus.  (Id. p. 335 ln. 5 - 20). Very simply, the Cardia has a mix of mucosal cells that are different in appearance than the Corpus and the Fundus.  (Id.). The Cardia has cardiac oxyntic mucosa and the Corpus and Fundus have gastric oxyntic mucosa. (Id.).

None of the Plaintiff's contemporaneous medical records (including pathology reports) diagnose him with cardia gastric cancer, but rather gastric adenocarcinoma or cancer. Dr. Mjønes makes no finding in her report that Plaintiff's cancer was in the gastric cardia but rather in the posterior wall of proximal stomach which she clarified to mean not in the cardia.

Defendants' questioned Dr. Mjønes repeatedly and at great lengths as to the location of Plaintiff's adenocarcinoma.

A. I probably would have written that we're mostly in agreement, but I think that the -- I think it's in the posterior  wall so that it could be located in the corpus or the fundus.

(Id. p.120 ln. 6 – 10).

Q. Where in your original report do you provide the observation that it is non-cardia cancer?

A. Well, I don't have the – the location in the original report, it says the location is in the posterior back wall of the -- "side proximal stomach posterior wall," it says.

(Id. p. 112 ln. 16 – 23).

A….I also looked at the cardiac mucosa, which in the operation specimen was about 0.6 millimeters on the tissue block I was sent later on and in another area is about -- is a little bit bigger. And – but it's -- and considering the cardiac mucosa is so narrow and the rest was completely oxyntic mucosa, it didn't give me any reason to doubt the location. And I still don't doubt the location as being non-cardia cancer.

(Id. ln. 6-15).

Q. And so with regard to the oxyntic mucosa, are you saying that this is body or fundus, or where are you saying it's located?

A. It's either in the -- you know, it's -- it's in the posterior wall. So it could be in the fundus, but it could also be in the bodies. I know, and hard to say for sure.

(Id. 106 ln. 5 – 13).

Q. Do you -- have you completely excluded the possibility that this cancer arose in the cardia?

A. Well, based on what I see, it doesn't make any sense for me that it's in the

10

cardia because you don't see much cardiac mucosa around it. You don't see
any cardiac mucosa around it.


(Id. p. 14 – 21).

Q. So you disagree that the presence of mucosal glands in the biopsy
specimen indicate that the specimen originated from the cardia?

A. Yeah, I think you have to see it in the clinical context, as she says herself
in the report. If you don't have the clinical information to guide you, you –
you can't say anything about the location. In this case they are saying that the
polyps are 3 centimeters distal from the site. You see oxyntic mucosa and you
see some mucosa glands that consist of foveolas, so in that respect, to me, the
biopsy fits with that location. It's not specific for cardia location based on that
biopsy.

(Id. p. 110 ln 10 - 25).

Q. We've talked a lot today about where Mr. Baudin's tumor was located, and
you have reached the conclusion you've discussed today that it was in a -- was
not in the cardia. Am I right about that?

A. Yes, I think it's more likely than not that it's in oxyntic mucosa that's not in
the cardia.

(Id. p. 288 ln. 7 – 15).

Q. Okay. And then it -- but it was after you read Dr. Voltaggio's report,
including, but not limited to, the correlation to the 3 centimeters distal to the
esophageal junction that you determined that from your perspective this tumor
did not arise in the cardia?

A. Yes, I never thought it was a cardiac cancer based on what I've seen. I
never had that in mind. And I didn't think of it as a cardiac cancer. I thought
of it as a stomach cancer.

 (Id. p. 290 ln.14 -25).

     Clearly, that Plaintiff had non-cardia gastric cancer was not a "new" opinion offered by Dr.

Dr. Mjønes at her deposition.  Following Defendants' exhaustive questions on the subject of Dr.

Mjønes' analysis concerning the location of Plaintiff's gastric cancer, Plaintiff's cross-examination

on the same subject can hardly be characterized as outside the scope of either Defendants'

examination of Dr. Mjønes or her Report.

2)    Defendants' challenged Dr. Mjones' for not finding pathological evidence that
<u>Plaintiff had Barrett's Esophagus</u>.

Because there was no evidence of Barrett's esophagus in the pathology of Plaintiff's tissue,

Dr. Mjønes's Report does not include Barrett's as a finding arising out of her examination of

Plaintiff's histology.

Barrett's esophagus is a condition whereby the "normal squamous epithelium covering

[the] esophagus…is changed out. Like after sequences of inflammation, you might have a change

– like the squamous epithelium is changed by glandular epithelium that looks like intestinal-type

epithelium in the sense that you would find goblet cells present...in the areas where you have the

salmon colored mucosa." (Id. p. 339 ln. 25 – 340 ln. 13).  Dr. Mjønes explained that she diagnoses

Barrett's esophagus on a weekly basis. (Id. p. 340 ln. 18 – 24).

As with the location of the tumor discussed above, Defendants' experts have based their

opinions, in part, on the alleged fact that Plaintiff had Barrett's esophagus. For example,

Defendants' expert, Dr. Thomas Wang opined that "The patient was likely developing **Barrett's**

esophagus, intestinal metaplasia above the GE junction. This type of severe GERD/**BE** in the

setting of a large hiatal hernia is, as previously discussed, associated with an increased risk of GEJ

and gastric cardia adenocarcinoma."  (Exhibit E at 57 [emphasis added]; see also Exhibit G at 29

"Specifically, Mr. Baudin's … likely Barrett's esophagus are risk factors…"). During their

examination of Dr. Mjønes, Defendants sought Dr. Mjønes confirmation of this diagnosis because

their own pathologist did not offer that opinion.  In fact, Defendants laid the foundation for this

attempt and asked questions to qualify Dr. Mjønes as an expert in this area.  For example,

Defendants asked Dr. Mjønes questions about the diagnosis of Barrett's esophagus such as "How

would Barrett's appear to an endoscopist visually?" and "is the presence of goblet cells required

for diagnosis of Barrett's?" (Exhibit C at 211 ln. 25 – p. 212 ln. 1 and p. 280 ln. 12-13). This

attempt failed, however, because according to Dr. Mjønes' review of the materials, there is no

pathological evidence of Barrett's in Mr. Baudin:

> Q. Do you have any reason to disagree that this patient had been diagnosed endoscopically with Barrett's?
>
> A. Well, I don't see any proof of Barrett's in the sections, so in any of the slides I've seen. To diagnose a patient with Barrett's, you'd have to see goblet cells in the esophagus, and I've seen no signs of goblet cells in the patient's esophagus.

> (Id. p. 107 ln. 14 -23).

As with its examination of Dr. Mjønes concerning the location of Plaintiff's tumor,

Defendants explored the issue of Barrett's esophagus thoroughly with Dr. Mjønes.

> Q. And you identified that the GE junction was well-defined. What significance was that to you, and do you agree with that determination?
>
> A. Well, I haven't seen the gross specimens, so I couldn't -- I can't say -- say something about something I haven't seen like that. But the fact that it's well-defined tells me that there's no jagged edges or something that you'd normally see in the Barrett's.

> (Id. p. 154 ln. 6 -18).

> So it tells me that it wasn't many changes consistent with the Barrett's from looking -- just from that description. That's how I would interpret it.

> (Id. p. 155 ln. 10 – 14).

> Q. And looking at that last section, which I'll tell you take a look at, would you -- my question will be, could you agree with me the endoscopist identified Barrett's -- changes consistent with Barrett's at the GE junction?
>
> A. I can see that he says that, but you can't diagnose Barrett's without histology.

> (Id. p. 211 ln. 12 – 20).

> Q. From your perspective, Dr. Mjønes, is the presence of goblet cells required for diagnosis of Barrett's?
>
> A. For one thing, you can't have goblet cells in the stomach -- in the stomach and call it Barrett's. The goblet cells would have to be in -- in the esophagus, right?… And according to the American Gastroenterological Society, you require Barrett's cells to call it Barrett's. You require goblet cells to call it Barrett's.

(Id. p. 280 ln. 11- 23).

Defendants explored at length the fact that Dr. Mjønes did not make a finding of Barrett's esophagus in her examination of Plaintiff's pathology. Plaintiff's cross-examination of the issues raised and explored by Defendants was entirely appropriate and within the scope of Defendants' examination and Dr. Mjønes' Report.

V.    PLAINTIFF'S AMENDED DISCLOSURE IS COMPLETE AND APPROPRIATE

Plaintiff's Amended Expert Disclosure merely reflects the fact that the Defendants have made Dr. Mjønes a testifying expert by taking her testimony, or, at the very least, a testifying fact witness. Plaintiff's Amended Expert Disclosure explicitly limits his use of Dr. Mjønes testimony to the deposition testimony that was demanded and obtained by the Defendants. There is no reasonable basis to penalize the Plaintiff for acceding to Defendants' demand to depose Dr. Mjønes. Indeed, it is difficult to see how her testimony could have been elicited by the Plaintiff in the trial of this matter but for Defendants' demand. Now, after having imposed the cost of Dr. Mjønes deposition on Plaintiff's and demanded Dr. Mjønes appearance for a deposition that went until nearly 11 pm Norway time, Defendants protest and seek to preclude the use of the testimony they insisted upon securing.

VI.    PLAINTIFF'S AMENDED DISCLOSURE SATISFIES RULE 26(a)(2)

Rule 26 (2)(A) states that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence." Rule 26 (2)(C) requires disclosure of witnesses who are "expected to present evidence" at trial even though they are not required to give a report pursuant to Rule 26(2)(A). As has been stated above, at the time of Plaintiff's Expert Disclosures on January 14, 2022, Plaintiff did not intend to use Dr. Mjønes at trial to present evidence, so was not required to include Dr. Mjønes in his Expert Disclosures.

Notwithstanding the above, Defendants insisted on taking the deposition of Dr. Mjones. Plaintiff initially opposed the Defendants' request to depose a non-testifying consultant. However, Defendants insisted on taking the deposition. Ultimately, as discussed above, Plaintiff sought and received Dr. Mjønes cooperation and Plaintiff's counsel flew to Norway to assist Dr. Mjønes in preparing for the deposition and the deposition took place remotely in Trondheim, Norway on March 22, 2022.

Following the deposition and upon receipt of the transcript, Plaintiff filed an Amended Expert Disclosure to, among other things, add Dr. Mjønes to his testifying expert disclosure. Plaintiff has fully satisfied the rule for expert disclosure which require "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness' qualifications, including a list of publications authored in the previous 10 years; (v) a list of all cases in which, during the previous 4 years, the witness testified as an expert at trial; and (vi) a statement of the compensation to be paid for the study and testimony in the case." F.R.C.P. 26 (2)(A), et seq.

Plaintiff provided timely Defendants with a complete statement of all the opinions that she will express and the reasons for them on January 14, 2022 in her Report attached to Dr. Waldum's expert report. In the Report, Dr. Mjønes included all the facts and data used by her in forming her opinions. In her deposition, Dr. Mjønes explained her observations and findings (including what she did not find) and added additional depth and context in response to questions from Defendants. Dr. Mjønes produced her notes which she used to summarize the observations and opinions in her Report. At the time of her deposition, Dr. Mjønes produced her curriculum vitae and list of publications, and discussed these with Defendants. Dr. Mjønes made it clear that she has never been an expert at trial or by deposition previously. Finally, Dr. Mjønes provided a statement of her

compensation for participation in the case.

Defendants sought an advantage in taking the deposition of a non-testifying expert hoping, one would imagine, that her testimony would be favorable to AstraZeneca or at least contradictory to Plaintiff's own experts. It was not. Now Defendants' protest that Plaintiff's have broken the rules by "disclosing" Dr. Mjønes after the deadline had passed. Through their insistence, Defendants knowingly converted Dr. Mjønes from a non-testifying expert to a testifying expert. Under the Rules of Civil Procedure, Plaintiff, who has agreed that Dr. Mjønes will not appear at trial and to rest on her deposition testimony, should be permitted to use that deposition transcript as it would any other deposition taken in the case. There is no conceivable prejudice to the Defendants in allowing Plaintiff's Amended Expert Disclosure which merely recognizes the change in Dr. Mjønes status as a non-testifying expert to a testifying expert occasioned by their insistence in obtaining her testimony.

Alternatively, should the Court find that Plaintiff's disclosure with regard to Dr. Mjønes is deficient, Plaintiff requests leave to file an amended expert disclosure for Dr. Mjønes, or, to allow Plaintiff to amend his expert disclosure to designated Dr. Mjønes' as a rebuttal witness.

VII.    DEFENDANTS EXHAUSIVELY QUESTIONED DR. MJØNES AND SHOULD NOT BE AFFORDED AN OPPORTUNITY TO RE-DEPOSE HER.

Pursuant to Rule 30(d)(1) "a deposition is limited to 1 day of 7 hours." Defendants have had more than ample time to examine Dr. Mjønes, and a further deposition would be unduly burdensome and costly to the Plaintiff requiring him travel back to Norway, not to mention the additional extraordinary inconvenience to Dr. Mjønes who never intended to testify in the first instance. Further, there is no information that exists today that was not available to the Defendants at the time of Dr. Mjønes' voluntary deposition. Indeed, given the thorough nature of Dr. Mjønes' deposition, it is hard to imagine that there is ground left to cover. Defendants request to re-depose Dr. Mjønes should be denied.

VIII.    CONCLUSION

For all the foregoing reasons, Defendants' Motion to Strike Reports and Testimony of Dr. Patricia Mjønes, and, in the alternative, to Re-depose Dr. Patricia Mjønes should be denied. Plaintiff's Amended Expert Disclosure should be allowed and Plaintiff should be allowed to use the testimony of Dr. Mjønes as permitted under the Rules of Civil Procedure, or, alternatively, Plaintiff should be permitted to file a Supplemental Amended Expert Disclosure to address any concerns identified by the Court, or designate Dr. Mjønes in rebuttal.

Respectfully Submitted,

/s/Michael E. Gallant
Michael E. Gallant
(Admitted *Pro Hac Vice*)
Dalimonte Rueb Stoller, LLP
1250 Connecticut Avenue NW
Suite 700
Washington, DC 20036
Tel: (202) 738-5906
Email: Michael.Gallant@drlawllp.com

John A. Dalimonte
(Admitted *Pro Hac Vice*)
Dalimonte Rueb Stoller, LLP
75 State Street, Suite 100
Boston, MA 02109
Tel:  888-443-7529
Email: John@drlawllp.com

John M. Restaino
(Admitted *Pro Hac Vice*)
Dalimonte Rueb Stoller LLP
5700 Fleet Street, Suite 200
Carlsbad, CA 92008
Tel: 888-443-7529
Email: Restaino@drlawllp.com

Christopher L. Coffin, R.N., B.S.N., J.D.
(Bar No. 27902)
Pendley, Baudin & Coffin, L.L.P.
2505 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Tel: 504-355-0086
Email: ccoffin@pbclawfirm.com

<u>CERTIFICATE OF SERVICE</u>

I, Michael E. Gallant, hereby certify that on May 18, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.


<u>/s/Michael E. Gallant</u>

Michael E. Gallant